Town of Yorkville, Appellant, vs. Fonk and wife, Respondents.*

*February 7—February 28, 1958.*

---

* Motion for rehearing denied, with $25 costs, on May 6, 1958.

For the appellant there was a brief by *H. H. Brown* of Union Grove, attorney, and *La France, Thompson, Greenquist, Evans & Dye* of Racine of counsel, and oral argument by *Kenneth L. Greenquist.*

For the respondents there was a brief and oral argument by *David L. Phillips,* attorney, and *Burton Lepp* of counsel, both of Kenosha.

Brown, J. In *Des Jardin v. Greenfield* (1952), 262 Wis. 43, 53 N. W. (2d) 784, we declared that the same principles of constitutionality apply to trailer ordinances that apply to zoning ordinances. The source of the power of the legislature

to authorize their enactment is dependent on the same general police power.

The power to pass ordinances must be reasonably exercised but within the field delegated it may go to the boundaries of reason and within that field the municipality's discretionary power is supreme. *C. Beck Co. v. Milwaukee* (1909), 139 Wis. 340, 348, 120 N. W. 293. When a municipal body enacts regulations pursuant to authority expressly granted, all presumptions are in favor of its validity and any person attacking the ordinance must make the fact of its invalidity clearly appear. The function of a reviewing court is solely for the purpose of determining whether legislative action under the power delegated to the municipality passed the boundaries of its limitations or exceeded the boundaries of reason. The delegation to the municipality of this power by the legislature implies a field of legislative discretion within which its acts are not subject to judicial review. It is only when the bounds of that field are clearly exceeded that courts will deny validity to the ordinance. *La Crosse v. Elbertson* (1931), 205 Wis. 207, 211, 237 N. W. 99.

Trailer camps in recent years have become so common that it is not beyond the bounds of reason that the legislature may believe that such camps, with their collection of small mobile homes, present definite problems of health, safety, morality, and general welfare in the area which is affected by the presence of such camps. Granting that problems of this nature are presented, it is not beyond the bounds of reason to believe that the larger the concentration of mobile homes the greater or more intense the problems will become, and, conversely, the problem will be diminished by camps less densely populated. The legislature, then, may authorize the municipalities most directly concerned to apply their local knowledge to the local problem and attempt to deal with it by regulating the number and population of the camps

to a point where the municipality may tolerate the problems which such camps present.

We have said:

"Courts will not interfere with the exercise of police power by a municipal corporation in the absence of a clear abuse of discretion and unless it is manifestly unreasonable and oppressive, for it is not within the province of the courts, except in clear cases, to interfere with the exercise of this power reposed by law in municipal corporations. 11 Am. Jur., Constitutional Law, p. 1092, sec. 307. Municipal corporations are *prima facie* the sole judges respecting the necessity and reasonableness of ordinances under their police power, and every intendment is to be made in favor of the lawfulness and reasonableness of such ordinance. The city is presumed to have full knowledge of local conditions, and its adoption of an ordinance in the light of this knowledge creates a *prima facie* presumption that it is reasonable. 3 McQuillin, Mun. Corp. (2d ed.), p. 110, sec. 951. The reasonableness of an ordinance depends upon the purpose sought to be accomplished and the effect upon all who must comply with it." *Dyer v. City Council of Beloit* (1947), 250 Wis. 613, 616, 27 N. W. (2d) 733.

We need not pass on the trial court's conclusion that in reference to public health, safety, and morality the 25-space limit by the ordinance was arbitrary and invalid. It sustained the ordinance because of its reasonable relationship to the welfare of the school district. In this, we concur.

Testimony of the school authorities establishes that the district school of the area in which this camp is situated is populated beyond its facilities. According to the recommendations of the state department of public instruction the school is equipped for 30 students. The present enrollment is 35 students. In recent years the trailer camp has furnished five, six, or seven pupils per year. In its memorandum decision the learned trial court well said:

"Trailers, by their very nature, are transitory and therefore lack the permanency for dwelling purposes conducive to the well-ordered development of the community. The basic na-

ture of a trailer camp and the number of trailers therein make it extremely difficult, if not impossible, for a school district to adequately plan, under sound economic principles, for the education of the children in the district. It appears that the Badger School District has now reached its maximum capacity. To increase the number of trailers in the district to an unlimited number with a corresponding increase in the number of children who must be educated, would necessitate expansion of the school facilities. The school district is limited in its borrowing under sec. 67.03 (1), Stats., to five per cent of the equalized value of the taxable property in the district. To have the school district go into debt to increase its school facilities in order to take care of the increased number of children occupying the trailer camp without permanency of residence or the building of permanent homes, would place upon the district a financial dilemma. It is obvious that the school district could not adequately plan for the future where there is no assurance that the number of trailers would remain constant, or the camp closed. This situation was apparently recognized by the legislature when it authorized cities, villages, and towns to limit the number of trailers that may be parked or kept in any one camp and to also limit the number of licenses for trailer camps in any common school district. To limit the number of trailer camps in any school district without limiting the number of trailers in each camp would accomplish no useful purpose in so far as the problems of the school district are concerned."

The ordinance reasonably tends to stabilize the problems created by the transient nature of mobile-home life to a point where school districts may cope with them.

We concur in the trial court's decision that neither the statute nor the ordinance in question here is unconstitutional.

The trial court held that the defendants had acquired vested rights to operate 47 trailer spaces, in spite of the ordinance limit of 25, because they had fully completed 23 spaces and partially completed 24 other spaces at the time the ordinance was adopted. We consider that the court was mistaken in its conception of vested rights to a nonconforming use. The right is to continue the use of a property which use

has already been undertaken at the time when the law is changed. This principle would have protected the defendants in continuing their development and use of the 24 spaces under construction. But they did not have a vested right to operate a 47-space trailer camp wherever they please. After passage of the ordinance the defendants bought another parcel of land, pulled up a part of their equipment and with it improved the new parcel. This is not a continuance of the use of property already undertaken at the date of the ordinance but is an attempted extension of the nonconforming use to new property. Nonconforming uses are closely watched and limited and are not to be enlarged in derogation of the general scheme of the ordinance for the use of property. *Hay v. Board of Adjustment* (1955), 37 N. J. Super. 461, 117 Atl. (2d) 650, 651; *Sitgreaves v. Board of Adjustment* (1947), 136 N. J. L. 21, 54 Atl. (2d) 451, 455; 8 McQuillin, Mun. Corp. (3d ed.), p. 476, sec. 25.184.

There is no doubt that the original 24-space parcel was discontinued as space for trailers. Its equipment was removed and the property developed for other uses. Whether or not this was an abandonment of the right to operate trailers there is not presented to us. The defendants do not attempt to operate trailers there nor do they claim a right to do so. What they are doing is attempting to transfer their right to operate trailer spaces in that location to another locality. Their nonconforming use is not ambulatory. They cannot shift it to the property which they acquired after the passage of the ordinance.

The judgment should be reversed with directions to grant the relief demanded by the complaint.

*By the Court.*—Judgment reversed, cause remanded with directions to grant the relief demanded by the complaint.