PHOTOS ET AL. *v.* CITY OF TOLEDO ET AL.

(No. 205135—Decided January 22, 1969.)

Common Pleas Court of Lucas County.

*Mr. Thomas G. Papps,* for plaintiffs.
*Mr. John J. Burkhart,* for defendants.

CONNORS, J.  In this action the plaintiffs, on behalf of themselves, the municipality, and all its taxpayers, seek a permanent injunction against the city of Toledo, Anthony Bosch, Chief of Police, Clifford T. Quinn, Safety Director, and William J. Gross, City Manager, enjoining the city of Toledo and the named officials thereof from implementing or enforcing Ordinance No. 719-68 (the so-called Gun Control Law) and declaring such ordinance unconstitutional and contrary to the Charter of the city of Toledo, restraining the named defendants from collecting fees or registering any applicants, and for costs and attorney fees.

The ordinance under attack, passed August 12, 1968, as an emergency measure, is as follows:

### ORDINANCE No. 719-68

AMENDING AND SUPPLEMENTING CHAPTER 17 OF THE TOLEDO MUNICIPAL CODE BY THE ADDITION THERETO OF A NEW ARTICLE XIX TO PROVIDE FOR THE CONTROL OF THE POSSESSION AND SALE OF GUNS WITHIN THE CITY OF TOLEDO; AND DECLARING AN EMERGENCY.

BE IT ORDAINED BY THE COUNCIL OF THE CITY OF TOLEDO:

SECTION 1. That Chapter 17 of the Toledo Municipal Code be and it is hereby amended and supplemented by the addition thereto of Article XIX as follows:

### ARTICLE XIX

### GUN CONTROL LAW

SECTION 17-19-1.  DEFINITIONS.

As used in Article XIX of Chapter 17 of the Toledo Municipal Code:

1. "Firearm" means any weapon, including a handgun, by whatever name known, or the barrel, receiver, or any part of the firing mechanism of such weapon, which is designed to eject or propel a projectile by the action of an explosive or combustible propellant, but does not include inoperable firearms which cannot be rendered operable.

2. "Handgun" means any pistol, revolver, or other firearm, having a barrel not exceeding twelve (12) inches in length, measured by the insertion therein of a rod with the receiver or slide closed,

but does not include handguns designed and safe only for use with black powder.

3. "Firearms dealer" means any person, firm or corporation regularly engaged in the busines of selling or trading firearms or ammunition at wholesale or retail within the limits of the City of Toledo, whether as the principal business of such person, firm, or corporation, or in addition thereto.

4. "Fugitive from justice" means a person who flees, escapes from custody, conceals or attempts to use any other unlawful means to avoid prosecution or punishment for a felony under the laws of this or any other state, the United States or any of its territories or possessions, the District of Columbia, or any foreign country with which the United States has a treaty of extradition in effect.

5. "Resident" means any person who has a factual place of residence within the limits of the City of Toledo.

6. "Nonresident" means any person who does not have a factual place of residence within the limits of the City of Toledo.

7. "Minor" means any person under the age of twenty-one (21) years.

SECTION 17-19-2.  PROHIBITIONS.

1. No person shall purchase, own, possess, receive, have on or about his person, or use any firearm or ammunition, if such person is a fugitive from justice or is under adjudication of mental incompetence.

2. No person shall purchase, receive, have on or about his person, or use any firearm or ammunition while under the influence of alcohol, any narcotic drug, hallucinogen, or other dangerous drug.

3. No person shall purchase, own, possess, receive, have on or about his person, or use any handgun or handgun ammunition, if such person has been convicted of a felony involving the use or the threat of use of force or violence under the laws of this or any other state, the United States or any of its territories or possessions, the District of Columbia, or any foreign country with which the United States has a treaty of extradition in effect, provided however, such person shall be eligible to possess, purchase, own, receive or have on or about his person or use a handgun or handgun ammunition after ten (10) years have elapsed from the date of completion of any sentence, probationary period or parole imposed upon such person so convicted.

4. No person shall knowingly sell, transfer, give, deliver, or furnish any firearm or ammunition to any person prohibited by this section from purchasing, owning, possessing, receiving, having on or about his person, or using such firearm or ammunition.

SECTION 17-19-3.  FIREARMS CONFISCATED.

Any firearm seized by a police officer upon the arrest of any

person, firm, or corporation charged with a violation of any of the provisions of this Article shall, upon conviction of such person, firm or corporation, be ordered confiscated by the Municipal Court of the City of Toledo, and such firearm shall be turned over to the Division of Police for disposal, except that any firearm so seized which has been reported stolen shall be returned to the lawful owner thereof.

SECTION 17-19-4. IDENTIFICATION CARD REQUIRED.

1. No person shall purchase, own, possess, receive, have on or about his person, or use any handgun except upon a suitable firing range, unless such person has a handgun owner's identification card issued to him and in effect pursuant to this section, or unless such person is exempt from the requirement of an identification card pursuant to Section 17-19-5 of the Toledo Municipal Code.

2. Application for a handgun owner's identification card shall be made in writing under oath to the Chief of Police of the City of Toledo, and shall be accompanied by an application fee of Three Dollars ($3.00) which shall be paid into the treasury of the municipal corporation and credited to a special account created and maintained for the specific purpose of defraying the cost of the enforcement of this ordinance. If it appears upon investigation that the applicant is a resident of the City of Toledo and is not prohibited by this section from being issued an identification card, the Chief of Police *shall* issue such card to the applicant within not less than seven (7) nor more than fourteen (14) days from the date of application. A copy of such card shall be retained by the Chief of Police together with a copy of the application. which documents shall be maintained on permanent file by the Chief of Police. Handgun owner's identification cards issued pursuant to this section expire on the thirtieth day following the holder's third birthday after the date of issuance of such card. and are void at any time prior to such date upon the holder becoming a member of the class of persons prohibited by this section from being issued handgun owner's identification cards.

3. All identification cards issued pursuant to this section shall be entitled "City of Toledo, Ohio. Handgun Owner's Identification Card." shall be serially numbered according to a system devised by the Chief of Police. shall bear the date of issue. the date of expiration, the name of the Chief of Police. and the applicant's name, home address. birth date. physical description. full face photograph, and Social Security number and shall be signed by the holder.

4. A handgun owner's identification card shall not be issued to any person who is:

A. A person prohibited by Section *17-19-2* of the Toledo Municipal Code from purchasing. owning. possessing. receiving. having on or about his person, or using any firearm or ammunition;

B. A minor;

C. A person convicted of an illegal use or possession of narcotics;

D. A person with more than one (1) conviction of being drunk and disorderly within one (1) year prior to his application for such identification card;

E. Any person with more than one (1) conviction of a misdemeanor involving the use of force and violence, or the threat of the use of force and violence against the person of another within one (1) year prior to his application for such identification card.

5. No person shall knowingly give any false information in making application for a handgun owner's identification card, and no person shall use or attempt to use a handgun owner's identification card to purchase, own, possess, receive, have on or about his person, or use any handgun, knowing such identification card to belong to another, or knowing it was obtained by means of false information, or when it is void by reason of the holder becoming a member of the class of persons prohibited by this section from being issued a handgun owner's identification card.

6. No person shall use or attempt to use his handgun owner's identification card to obtain any handgun for any person who does not have a handgun owner's identification card issued to him and in effect pursuant to this section and is not exempt from the requirement of an identification card pursuant to Section 17-19-5 of the Toledo Municipal Code, and no person shall knowingly permit his identification card to be used by another to purchase, own, possess, receive, have on or about the person, or use any handgun or handgun ammunition.

7. If for reasons set forth in this article, an applicant is denied a handgun owner's identification card who, at the time of making the application is the owner or possessor of a handgun, said applicant shall, within thirty (30) days from the date of denial of such handgun owner's identification card, dispose of such handgun pursuant to the provisions of Section 17-19-6 of the Toledo Municipal Code.

8. A possessor of a handgun owner's identification card shall become ineligible to possess such a card if he becomes one of that class of persons set forth in subsection 4 of this section, and he shall thereupon immediately forfeit such card and return the same to the Chief of Police, and he shall within thirty (30) days from the date of forfeiture dispose of any handguns in his possession pursuant to the provisions of Section 17-19-6 of the Toledo Municipal Code.

SECTION 17-19-5. EXEMPTIONS.

1. The requirements of a handgun owner's identification card contained in Section 17-19-4 of the Toledo Municipal Code do not

apply to the purchase, ownership, possession, receipt, having on or about the person, or use of any handgun or handgun ammunition by:

A. Any state of the United States, or any political subdivision, department, or agency of either;

B. Officers or agents of any state or the United States or any political subdivision, department, or agency of either, members of the organized militia of any state or the armed forces of the United States, or law enforcement officers of any political subdivision to the extent that the official duties of any such person require him to purchase, own, possess, receive, carry, or use handguns;

C. Licensed manufacturers and dealers, and their agents and servants, to the extent that the purchase, ownership, possession, receipt, or use of any handgun is in the ordinary course of business;

D. Nonresidents of the City of Toledo who are residents of the State of Ohio; provided that such persons are not prohibited by the provisions of Section 17-19-2 or 17-19-4 of the Toledo Municipal Code, and possess and exhibit upon request such valid permit, authorization, or identification issued by the Chief of Police or the Sheriff of their place of residence to purchase, own, possess, receive, carry, or use any handgun and provided, further, that handguns in the possession of or under the control of nonresidents shall at all times be unloaded and encased, except while on a suitable firing range, or while being used for lawful hunting, or while unloaded at a public firearms display, show or exhibition. The requirements of a valid permit, authorization or identification as required by this subsection shall not apply to a nonresident who enters the city with firearms for the sole and only purpose of exhibiting or trading said firearms at a public firearms display, show or exhibition, or for the sole and only purpose of participating in an organized and sanctioned pistol match. The permit, authorization or identification provided for in this subsection shall be valid for thirty (30) days only from the date thereof.

E. Nonresidents of the City of Toledo, Ohio, removing to this city for the purpose of establishing residence herein, during a period not exceeding thirty (30) days from the date of their entry into this city for such purpose; provided that such persons shall possess and exhibit upon request such valid permit, authorization, or identification as may be required by the laws of their former domicile to own, possess, receive, or have on or about the person any handgun.

F Executors, administrators, guardians, receivers, trustees in bankruptcy, and other fiduciaries duly qualified and appointed by a court of competent jurisdiction, when acting in their fiduciary capacity, and their attorneys.

G. Heirs and legatees acquiring any handgun or handgun ammunition through distribution of an estate, and other persons

other than fiduciaries acquiring any handgun through operation of law, during a period not exceeding sixty (60) days from the date of their coming into possession of any handgun.

H. Carriers, warehousemen, and others engaged in the business of transporting or storing firearms, handguns and their agents, servants, to the extent that the ownership, possession, receipt, or having on or about the person of any handgun by such persons is in the ordinary course of business and in conformity with the laws of this state or the United States.

2. No person shall purchase or otherwise obtain, or attempt to purchase or otherwise obtain, any handgun by claiming an exemption pursuant to this section from the requirement of a handgun owner's identification card contained in Section 17-19-4 of the Toledo Municipal Code knowing such claim of exemption to be false.

SECTION 17-19-6. FURTHER PROHIBITIONS.

1. No person in this city shall purchase or otherwise obtain ownership or possession of, or as security for a loan, any handgun from any person, unless the transferor exhibits a handgun owner's identification card valid on its face, issued to the transferor pursuant to Section 17-19-4 of the Toledo Municipal Code, or unless the transferor exhibits evidence that he is exempt from the requirement of an identification card pursuant to Section 17-19-5 of the Toledo Municipal Code.

2. No person in this city shall sell, deliver, transfer, or furnish any handgun to any person in this city, unless the transferee exhibits a handgun owner's identification card valid on its face and issued to the transferee pursuant to Section 17-19-4, or unless the transferee exhibits evidence that he is exempt from the requirement of an identification card pursuant to Section 17-19-5 of the Toledo Municipal Code.

SECTION 17-19-7. DEALERS LICENSE.

1. Every firearms dealer in this city shall procure a license to engage in such business. Any firearms dealer engaged in such business at more than one permanent location in this city shall procure a separate license for each such permanent location. Application for such license shall be made under oath to the Chief of Police.

2. Upon application and payment of the fee prescribed in Section 17-19-8 of the Toledo Municipal Code, the Chief of Police shall issue a license to engage in business as a firearms dealer. No license shall be issued to any applicant whose license has been revoked nor to any applicant who has been convicted of a violation of any section of this article, until the expiration of five (5) years from the effective date of such revocation or five (5) years from the date of conviction. No person, firm or corporation shall

be issued a firearms dealers license who does not meet the qualifications or a handgun owner's identification card. The license issued pursuant to this section shall be prominently displayed by every firearms dealer at his place of business.

3. Thirty (30) days after the adoption of this ordinance, no person, firm or corporation shall engage in business as a firearms dealer in this city without a license as provided by this section. Each day of continuing violation of this section shall be deemed a separate offense.

SECTION 17-19-8. FEE.

The fee for the license required by Section 17-19-7 of the Toledo Municipal Code shall be Ten Dollars ($10.00). The license so issued shall be good and considered to be in full force and effect until such time as the license is revoked, surrendered, or the licensee discontinues the business of being a gun dealer. Licenses issued pursuant to the provisions of this Article are not transferable.

SECTION 17-19-9. RECORDS.

1. Every firearms dealer shall maintain a record of the sale of handguns. Such record of sale shall contain the name of the firearms dealer; the place and date of the sale; the name, address, age and Social Security Number of the purchaser; and shall identify such handgun by manufacturer, model number or name, type, caliber, and serial number. If such weapon does not bear a serial number or is other than a standard model, or has been modified and improved, the record of sale shall give a brief description of the weapon including such information as may be necessary to identify it. The record of sale shall include the serial number of the identification card of the purchaser issued pursuant to Section 17-19-4 of the Toledo Municipal Code, or if the purchaser is a nonresident of Toledo, then such information as is contained in a valid permit, authorization, or identification as may be required by the laws of the residence of the purchaser, or valid permit, authorization or identification issued by the Chief of Police or the sheriff of the place of residence of such purchaser. Each such record of sale shall be signed by the purchaser and the salesman and no sale shall be made unless such identification card or permit is exhibited by the purchaser. In the instance of sales from a wholesale distributor to a dealer the license number of the dealer shall be recorded in lieu of the aforesaid identification card.

2. Every firearms dealer shall, on or before the 5th day of each month, furnish to the Chief of Police a copy of the record of sales of handguns made during the preceding month, and shall make available at all times to the Chief of Police or his duly authorized agents the record of sales of all firearms required to be kept pursuant to the provisions of the Federal Firearms Act. In the case

of a wholesale distributor, its records shall be made available at all times in lieu of the foregoing.

3. No firearms dealer or any agent or employee of such dealer shall fail to comply with this section or knowingly cause any false information to be entered on a record of sale of any handgun, and no purchaser of any handgun shall give any false information for entry on such record of sale.

4. As used in this section the term "wholesale distributor" shall be an individual, partnership, or corporation selling only to licensed dealers and not at retail or otherwise to individual consumers.

Section 17-19-10. Revocation of License.

1. When any licensed firearms dealer has been convicted of a violation of any of the provisions of this article, the Chief of Police shall revoke the license of such firearms dealer. A certified copy of the order of revocation shall be sent forthwith to the firearms dealer, who may appeal such order of revocation to the Director of Public Safety of the City of Toledo within ten (10) days from the receipt of the order. The Director of Public Safety shall conduct a hearing upon said appeal within ten (10) days from the receipt of a notice of appeal in writing from such order of revocation.

2. No firearms dealer whose license has been revoked pursuant to this section shall engage in business as a firearms dealer in this city for a period of five (5) years from the effective date of such revocation. Each day of continuing violation shall be deemed a separate offense.

3. No firearms dealer shall employ, or enter into any partnership or corporation with, any person, firm or corporation whose firearms dealers license has been revoked pursuant to the provisions of this section.

Section 17-19-11. Prohibition Against Carrying a Firearm in a Vehicle.

It shall be unlawful for any person, unless exempted by any of the provisions of this article, to transport in any vehicle in or upon the streets and public places of the City of Toledo any handgun without having in his possession an identification card required by the provisions of this article, or if a nonresident, an identification card, permit or authorization issued by the proper authorities of his residence, and provided further that said handgun shall at all times be unloaded and encased.

Section 17-19-12. Possession or Control of Firearm While in the Act of Committing Misdemeanor or Felony.

It shall be unlawful for any person to have in his possession or under his control any firearm while in the act of committing

either a misdemeanor or a felony involving the use or the threat of use of force and violence.

SECTION 17-19-13.  STOLEN OR LOST FIREARMS.

Whenever any firearm is stolen or lost, the person losing possession thereof shall, immediately upon discovery of such theft or loss, make a report thereof to the Chief of Police showing the following:

1. Name and address of the person owning or having possession of such firearm.
2. Kind of firearm.
3. Serial number.
4. Model.
5. Caliber.
6. Manufacturer of firearm.
7. Date and place of theft or loss.
8. A complete statement of the facts and circumstances surrounding such theft or loss.

SECTION 17-19-14.  PENALTY.

Any person, upon conviction of a violation of any of the provisions of this article, shall be fined in a sum not to exceed One Thousand Dollars ($1,000.00) or imprisoned in the workhouse for a period not to exceed one (1) year, or both.  Each day such violation is continued or permitted to continue shall constitute a separate offense and shall be punishable as such hereunder.

SECTION 17-19-15.  SEPARABILITY.

If any section, subsection, sentence, clause, phrase or portion of this article is for any reason held invalid or unconstitutional by any court of competent jurisdiction, such portion shall be deemed a separate, distinct and independent provision and such holding shall not affect the validity of the remaining portions thereof.

SECTION 2.  That this ordinance is hereby declared to be an emergency measure and shall take effect and be in force from and after its passage.  The reason for the emergency lies in the fact that this ordinance is necessary for the immediate preservation of the public safety.

Although plaintiffs assert that the action is brought by themselves and all the taxpayers of the city of Toledo, and although not rebutted by counsel for the defendants, the court takes judicial notice of Section 733.59 of the Ohio Revised Code, and holds that inasmuch as this action does not come within the purview of Sections 733.56 thru 733.58, Revised Code, which set forth the conditions under which

an individual taxpayer or taxpayers may institute an action against the city, the matter is considered brought by petitioners George T. Photos and Bennie J. Martin only.

This cause came on to be heard upon the amended petition of the plaintiffs, the answer of the defendants, the exhibits admitted by stipulation, and the oral arguments of counsel.

The essential allegations of the amended petition are as follows:

1. The plaintiffs are taxpayers and residents of the city of Toledo.

2. The plaintiffs are subject to the provisions of Ordinance No. 719-68 of the city of Toledo, the so-called "Gun Control Law."

3. The plaintiffs have made written demand upon the City Law Director to bring this cause of action, but that he has refused to do so.

4. Ordinance No. 719-68 was passed by the Council of the city of Toledo, as an emergency measure, on August 12, 1968.

5. The plaintiffs bring this action on behalf of the municipality and all its taxpayers.

6. The plaintiff, Bennie Martin, is the owner of a handgun, and he has not registered as a handgun owner pursuant to the requirements of the ordinance.

7. The plaintiffs allege the ordinance violates the plaintiffs' right to bear arms as provided by the Ohio Constitution; that the plaintiffs' constitutional right not to be compelled to testify against themselves is violated by this ordinance; that the plaintiffs' constitutional right to possess property free from governmental restraint is violated by this ordinance; that the plaintiffs' constitutional right to the equal protection of the law is violated, and that the plaintiffs are subject to a tax on a constitutional right.

8. The plaintiffs allege the ordinance was passed contrary to the city of Toledo's Charter relating to emergency measures.

9. The plaintiffs allege the ordinance violates the pro-

vision of the Charter which requires that ordinances shall not contain more than one subject which shall be clearly stated in the title.

10. The plaintiffs allege irreparable injury and no adequate remedy at law and, therefore, seek a permanent injunction against the defendants enforcing the ordinance.

The answer of the various defendants admits passage of the ordinance as an emergency measure on August 12, 1968; that the plaintiffs are citizens and taxpayers of the city of Toledo and as such are subject to all its laws and ordinances; that a timely written demand upon the Law Director was made to bring this action and that he refused to do so; that the city of Toledo has, in fact, implemented the provisions of the ordinance; the defendants deny all other allegations of the amended petition not admitted to be true.

The pleadings have raised certain issues, which the court defines as follows:

1. Is the ordinance in question a valid exercise of the police powers granted to municipalities under the home rule provisions of the Ohio Constitution?

2. Does the ordinance violate the Ohio constitutional provision providing for the right to bear arms (Article I, Section 4.)?

3. Does the ordinance violate any of the provisions of the Constitution of the United States?

4. Does the ordinance violate any of the provisions of the Charter of the city of Toledo?

In addition to the above issues which were raised by the pleadings, counsel for the plaintiffs, during oral arguments, raised specific issues which may or may not be covered by the above issues, which were rebutted by counsel for the defendants, and which the court will attempt to decide should they not be answered within the perimeter of the general issues raised on pleading.

The issues raised on oral argument are as follows:

1. The fact that the issuance or denial of an identification card rests solely in the hands of the Chief of Police of the city of Toledo under Section 17-19-1 (even

though the issuing authority is *required* to issue a permit unless the applicant is one of those persons spelled out in 17-19-4 A, B, C, D, or E), the ordinance provides for no appeal from the decision of the issuing authority.

2. The fact that Section 17-19-4 B provides that the issuing authority may not issue an identification card to a person under the age of twenty-one.

3. The fact that the ordinance provides for no method of sale (within the municipality) of a weapon the property of a person who, having been initially issued an identification card, falls within categories set forth under Section 17-19-4 C, D or E, is then required to surrender his identification card under Section 17-19-8. Plaintiff argues that this places the weapon owned by the person formerly registered in the category of contraband subject to confiscation without due process.

4. The fact that the ordinance requires a three ($3) dollar application fee, thus denying those who may be without the necessary fee the equal protection of the law.

The court will attempt to answer the issues it considers raised in the order they are set forth above.

With reference to the first issue, whether or not the ordinance is a valid exercise of the police powers granted to municipalities under the home rule provisions of the Ohio Constitution, Section 3, Article XVIII, the court holds that it is a valid exercise. The constitutional provision provides as follows: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." There is no question raised that the city of Toledo comes under, through its adopted charter, the provisions of this constitutional grant.

A municipal ordinance, passed under the above constitutional grant, must not be arbitrary, discriminatory, capricious, or unreasonable, and must bear a real and substantial relation to the health, safety, morals or general welfare of the public, *City of Cincinnati* v. *Correll*, 141 **Ohio St. 535.**

Section 1, Article I of the Constitution of Ohio provides: "All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

Section 4, Article I thereof provides: "The people have the right to bear arms for their defense and security; but standing armies, in time of peace, are dangerous to liberty, and shall not be kept up; and the military shall be in strict subordination to the civil power."

It is necessary, in evaluating the foregoing ordinance in the light of the above constitutional provisions, to consider the pronouncement of the Supreme Court of the United States, in *Jacobson* v. *Massachusetts*, 197 U. S. 11, 49 L. Ed. 643, wherein the court, speaking through Mr. Justice Harlan, at page 31, said: "If there is any such power in the judiciary to review legislative action in respect of a matter affecting the general welfare, it can only be when that which the legislature [here, the city council] has done comes within the rule that if a statute purporting to have been enacted to protect the public health, the public morals or the public safety, has no real or substantial relation to those objects, or is, *beyond all question*, a plain, palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." (Emphasis supplied.)

This court is unable to say that this ordinance under attack, enacted to protect the public safety, has no real or substantial relation to that object, or is, *beyond all question*, a plain, palpable invasion of rights secured by the Ohio Constitution; nor is it able to conclude that the ordinance is arbitrary, discriminatory, capricious or unreasonable. It bears a real and substantial relation to the safety of the public, and applies to all persons within the prescribed class.

With reference to issue two, the law is well settled that the state's power to prohibit carrying of concealed

weapons does not violate the constitutional provisions of Ohio regarding the right to bear arms. *State* v. *Nieto*, 101 Ohio St. 409. Further, the ordinance in question does not go as far as the state statute and is less restrictive than the state prohibition. Almost all state constitutions, with variations in phraseology, contain a guaranty similar in substance and effect to that found in the Ohio Constitution. Whatever may be the source or nature of the right to bear arms, or the precise character of those arms in connection with which the right is to be exercised, the manner of bearing arms is subject to regulation by the states or their political subdivisions, under their police power, provided the regulation is reasonable. *Jackson* v. *State*, 37 Ala. App. 335, 68 SO 2d 850; *Watson* v. *Stone, Sheriff*, 148 Fla. 516, 4 SO 2d 700; *State* v. *Hart*, 66 Ida. 217, 157 P. 2d 72; *Moore* v. *Gallup*, 267 App. Div. 64, 45 N. Y. S. 2d 63; *State* v. *Krantz*, 24 Wash. 2d 350, 164 P. 2d 453.

With reference to issue three, the Second Amendment to the Constitution of the United States does not apply to state and municipal legislation. This is a limitation upon the federal government so as not to prevent the states from having an effective organized militia and not as a grant of individual privileges or rights to keep arms or as a limitation upon the powers of the states to enact appropriate or regulatory laws. *United States* v. *Miller*, 307 U. S. 174; *United States* v. *Cruikshank*, 92 U. S. 542; *Presser* v. *Illinois*, 116 U. S. 252; among others.

Toledo's ordinance does not violate the Fifth or Fourteenth Amendments to the United States Constitution. It does not require anyone to testify against himself, nor does it deprive anyone of due process of law. It is regulatory in nature. The applicant for a handgun owner's identification card is not a person "inherently suspect of criminal activities." He is not required to divulge anything that would subject him to prosecution.

With reference to issue four, the court finds no fact situation which would necessitate a review of the action of the Council of the city of Toledo. Clearly only one subject matter was considered by the Council, and, with refer-

ence to the emergency clause question, the pleadings of plaintiffs admit that no valid referendum petition was filed by anyone with the Clerk of Council within the thirty-day period allowed by law and the Charter of the city of Toledo. The question is now moot. See *Youngstown* v. *Aiello*, 156 Ohio St. 32; *Vansuch, Dir.*, v. *State, ex rel. Fetch*, 112 Ohio St. 688; *State, ex rel. City of Fostoria*, v. *King, Aud.*, 154 Ohio St. 213; *State, ex rel. Lipovsky*, v. *Kizak, Clerk*, 15 Ohio St. 2d 27.

With reference to the issues raised on oral argument, the court disposes of them with this rationale. The plaintiffs herein have no standing to urge the vagueness of any of these criteria since obviously they have not applied for a license and been rejected by reason of "arbitrary discretion." As stated in *Highland Farms Dairy, Inc.*, v. *Agnew* (1937), 300 U. S. 608, at pp. 616-617:

"One who is required to take out a license will not be heard to complain in advance of application, that there is danger of refusal. *Lehon* v. *Atlanta*. 242 U. S. 53, 56; *Smith* v. *Cahoon*, 283 U. S. 553, 562. He should apply and see what happens."

Here, not even plaintiffs plead for the unregulated right of habitual drunkards, narcotic addicts, criminals, mental cases, or proponents of force and violence who approve and advocate such means to overthrow the government or deny the enjoyment by others of their constitutional rights to purchase firearms.

Questions relating to the wisdom, the necessity and the efficacy of a gun control law are not germane to the issues raised herein.

This court can conceive of no matter more concerned with public safety, health and welfare of the citizens of the city of Toledo than that of the indiscriminate purchase and use of firearms, and the regulation thereof in any manner, not preempted by the state of Ohio as is done here by a city ordinance, in the form of registration of the individual rather than the weapon, which should be subject to the police power of the city of Toledo.

The burden is on the plaintiffs to prove beyond a

reasonable doubt that there is no rational basis for the enactment of this ordinance, and it must be remembered that the evils and conditions, such as crime in the streets, which the Council can seek to eliminate, are not only those which are present today but those which can fairly be anticipated in the future. This court is of the opinion that plaintiffs' burden has not been met.

It is beyond serious challenge that the registration ordinance under attack, which requires registration to persons of good character, but denies to certain groups, such as the criminal, the minor, drunkard, persons convicted of misdemeanors involving the use of force and violence or the threat thereof against the person of another, the privilege of possessing handguns is related to the protection of the health, safety, order and welfare of the citizens of the city of Toledo.

We find no substantial merit in the claim that this ordinance wrongfully infringes upon the individual's constitutional rights under any of the provisions specified. Under the state's police powers, the common good takes precedence over private rights. One's home may be destroyed to prevent a conflagration. One's freedom of locomotion may be impeded to prevent the spread of a contagious disease. Our basic freedoms may be curtailed if sufficient reason exists therefor. Only in a very limited sense is a person free to do as he pleases in our modern society. Regulation is the price we pay for living in an organized society. As stated by Judge Leahy in *Burton* v. *Sills,* 99 N. J. Super. 516, 240 A. 2d 462, from the day we are born, when a birth certificate must be filed, until the day we die, when official certification thereof must be recorded, we spend the intervening years obtaining licenses to marry, to drive a motor vehicle, to sell alcoholic beverages, to operate a barber shop, to practice the learned professions and to do countless other things, including the obtaining of a license to hunt and fish. These burdens we assume for the good that flows therefrom. We find no basic difference in a requirment to obtain a gun purchaser's identification card.

This court is satisfied that this gun control ordinance in the form of a registration of the person is a proper and reasonable exercise of the state's police powers. It was adopted for legitimate ends. Its wisdom and enforcement are matters within the domain of the Council of the city of Toledo and those charged with its administration. It is too early to stamp it as a failure. Its efficacy must await the test of time. Already more than 12,578 persons have been issued the necessary identification cards permitting them to purchase guns in Toledo. Approximately 30 applications have been rejected. The propriety of these rejections has not been challenged herein. Some 1,490 applications are approved and await issuance. No law abiding citizen, free from the city's disqualifications, has been or will be precluded from purchasing, keeping or bearing arms.

Motion for a permanent injunction as prayed for denied. Costs to petitioners.