RALPH W. FINK, District Attorney, Richland County
You have asked for my opinion on the validity of a proposed Richland County ordinance prohibiting the sale of certain "no-deposit-no-return" bottles. The pertinent portion of the proposed ordinance reads as follows:
". . . effective July 1, 1971, . . . it will be illegal for the sale in any retail establishment, of what is commonly known today as the non-deposit throw-away carbonated soda pop bottle or commonly known as the non-deposit throw-away beer bottle, regardless of the size of the container that it is bottled in."
The proposed ordinance provides for a $200 forfeiture (or up to 90 days imprisonment) for violation, and contains the following declaration of intent:
"We . . . recognize the fact that such throw-away glass containers, specifically soda pop and beer bottles, have proved to be a danger not only to human life, but to conservation and agriculture, and it has become a great burden upon private citizens, highway department and park personnel to remove these items from private property, parks, rights-of-way, highways, etc." *Page 159 
As will be seen below, the particular language used in the ordinance raises insurmountable due process and equal protection problems. Since these errors can, and undoubtedly will be corrected, and recognizing also the wide public interest in laws and ordinances of this type, I will discuss the broader questions involved.
Once the question of the municipality's basic power to adopt such an ordinance is determined, the question becomes one of reasonableness — whether the particular regulation is a reasonable exercise of the police power, and, if so, whether it strikes a reasonable balance between advancement of local interests and interstate commerce.
 I. The County's Power to Adopt a "Disposal Bottle" Ordinance
A county, as an arm of the state, has only such powers as may have been granted to it by the legislature, and such others as may be fairly implied from the legislative grant. 54 OAG 101, 103, (1965); Dodge Countyv. Kaiser (1943), 243 Wis. 551, 11 N.W.2d 348.
The basic statutory grant of power to counties is found in sec.59.07 (5) and (64), Stats., which provide as follows:
"The board of each county may exercise the following powers, which shall be broadly and liberally construed and limited only by express language:
"* * *
"(5). . . have the management of the business and concerns of the county in all cases where no other provision is made, . . .
"* * *
"(64) Enact ordinances to preserve the public peace and good order within the county."
The county board of supervisors, as a legislative body directly responsible to the electorate, has been said to possess broad powers.Kenosha County C.H. Local v. Kenosha County (1966), 30 Wis.2d 279, 283,140 N.W.2d 277. A *Page 160 
county is a governmental agency of the State, and "performs primarily the functions of the state locally." State ex rel. Bare v. Schinz (1927),194 Wis. 397, 400, 216 N.W. 509; Kyncl v. Kenosha County (1968),37 Wis.2d 547, 555, 155 N.W.2d 583. General police powers such as those granted by sec. 59.07 (64), Stats., are, of course, inherent attributes of government, and encompass regulations for the protection of the lives, health and property of citizens, and the promotion of good order and morals. Chicago M. St. P.R. Co. v. Milwaukee (1897), 97 Wis. 418,422, 72 N.W. 1118; State ex rel. Bare v. Milwaukee (1967), 33 Wis.2d 624,629, 148 N.W.2d 21.
There are very few cases dealing with the statutory police power grant to counties. There is, however, an abundance of authority interpreting the statutory (as opposed to "home rule") police power of cities-authority which would be equally applicable in interpreting the general county police power. The statutory police powers of cities and villages are, of course, not to be confused with their home rule powers under Art. XI, sec. 3, Wis. Const. The two sources of authority-statutory grants of police power and the constitutional home rule reservation — have been treated separately by the courts, and where home rule is not under consideration, the decisions interpreting thestatutory grants to cities are equally applicable to counties.
Under sec. 62.11 (5), Stats., city councils are charged with "the management and control of city property . . ." and are granted the ". . . power to act for the government and good order of the city . . . and for the health, safety and welfare of the public, . . ." Like counties, cities have only such powers as are expressly granted — or necessarily implied — by statute. City of Madison v. Tolzmann (1959), 7 Wis.2d 570,573, 97 N.W.2d 513.
The scope of a municipality's authority to enact ordinances under its police power was described as follows in J. N. Corp. v. Green Bay
(1965), 28 Wis.2d 583, 585, 137 N.W.2d 434:
"It is elementary that an ordinance is presumed to be constitutional and that the attacking party must establish *Page 161 
its invalidity beyond a reasonable doubt. If there is any reasonable basis for its enactment, the ordinance must be sustained. Furthermore, this court will not interfere with a municipality's exercise of police power unless it is clearly illegal . . ."
In Boden v. City of Milwaukee (1959), 8 Wis.2d 318, 325, 99 N.W.2d 156, the court stated that:
". . . except in clear cases of oppressiveness or unreasonableness, it is not within the province of the courts to interfere with the exercise of such police power. This is because the legislative bodies of municipal corporations are prima facie the sole judges of the reasonableness of an ordinance enacted under their police power, and every intendment is to be made in favor of the reasonableness of such ordinance. (citing cases) . . ."
The power to pass ordinances must, of course, be reasonably exercised, but within the fields delegated by the legislature, ". . . it may go to the boundaries of reason, and within that field the municipality's discretionary power is supreme." Yorkville v. Fonk (1958), 3 Wis.2d 371,375, 88 N.W.2d 319.
Finally, in Cream City B.P. Co. v. Milwaukee (1914), 158 Wis. 86, 95, 99,147 N.W. 25, the court upheld the validity of an ordinance regulating billboard advertising, stating:
"In order to support legislation of this kind, a public need therefor must exist, and the act must at least have a tendency to support such need . . . and if a public purpose can reasonably be conceived which might rationally justify the act, the court cannot further weigh the adequacy of the need or the wisdom of the method."
". . . Between the point where an ordinance is obviously reasonable and the one where it is obviously unreasonable there is a wide range, a broad field for the exercise of legislative discretion. The action of the municipal authorities within that range is conclusive. Reasonable minds may well differ concerning the extent of it, and, this being so, legislative action should not be declared to be without justification unless it is clear beyond reasonable controversy that it is so . . ." *Page 162 
Some courts have held that the regulation — and even the outright prohibition — of billboards can be sustained, on aesthetic grounds alone, as promoting the general welfare. See Dade County v. Gould (Fla., 1957),99 So.2d 236.
Under the above rules, the Wisconsin Court has upheld, as a reasonable exercise of the police power, a city ordinance imposing certain standards on housing units stating that, under the general statutory grant of police power:
". . . The prohibition of a condition that tends to depress adjoining property values falls within the scope of promoting the general welfare and does not violate due process. (citing cases)" Boden v. City ofMilwaukee, supra. 8 Wis.2d at 325.
In Yorkville v. Fonk, supra, a town ordinance limited the number of spaces in any trailer park within the town to 25. The court upheld the ordinance as a reasonable exercise of the police power on the following basis: (1) It is "not beyond the bounds of reason" to assume that trailer parks present problems of health, safety, morality and general welfare; and (2) assuming this is so, it is not beyond the bounds of reason to believe that the larger the trailer park, the greater the problem.3 Wis.2d at 375.
In J. N. Corp. v. Green Bay, supra, the local billboard ordinance applied only to gas station signs, and it was upheld as reasonable on the basis that no showing had been made that other entities, such as drive-ins, etc., presented similar ingress and egress traffic problems.28 Wis.2d at 586-7.
These and other cases indicate that the question of the reasonableness or unreasonableness of a police power regulation, when raised in court, will depend largely on the facts presented. It cannot be disputed that municipalities in Wisconsin and elsewhere are experiencing serious problems in the area of solid waste disposal. Facts abound on the subject — particularly on the contribution to these problems made by non-degradable solid waste materials such as bottles and cans. On January 24, 1971, for example, the New York Times reported (sec. 4, p. 3) that in 1969 more than 36 billion bottles and glass jars were produced in the United States. *Page 163 
That amounts to 178 for every man, woman and child in the country — or 750,000,000 for Wisconsin alone (see 1970 Wisconsin Blue Book 717, for the state population estimate). Beer and pop bottles comprised fully half of these totals. A glance at local newspapers will reveal the seriousness of solid waste disposal problems in Wisconsin. In Dane County, for example, the situation is becoming acute. Facts such as these [together with facts concerning the industry (or industries) involved — is it primarily local, such as the sodapop bottling industry? Does the ordinance allow sufficient time to "re-tool" back to returnable containers?] as well as many other factual considerations, would have to be dealt with before a final determination of reasonableness or unreasonableness could be made.
My conclusion that county boards have the power to adopt such ordinances is bolstered by the fact that other statutes have given to counties the power to adopt anti-littering ordinances (sec. 349.06, Stats.), building and sanitary codes (sec. 59.07 (51), Stats.), and air pollution regulations (secs. 144.30-144.46, Stats.). In addition, sec. 144.44 (2), appears to authorize counties, as "local governing bodies" to regulate solid waste disposal. These statutes — particularly the solid waste control provisions — coupled with supporting findings of fact that non-returnable bottles and cans create a heavy burden on the condition and operation of disposal sites within the county, support a conclusion that the power to enact a "can-ban" ordinance is necessarily implied in the specific grant of power to regulate the disposal of solid wastes.
While it appears that a carefully drafted "can-ban" ordinance would be within the police power of the county and, in fact, I cannot say that the proposed draft is facially invalid as going beyond such power, a clear determination of the reasonableness of the regulation can be made only after consideration of a wide variety of relevant factors — none of which are before me at this time.
II. The Commerce Clause
As a general rule, a state (or municipality) cannot legislate in a manner that unreasonably discriminates against, or *Page 164 
places an undue burden upon, interstate commerce. 15 C.J.S., Commerce, § 10, pp. 404-5. The Wisconsin Court stated the rule as follows in Statev. Helwig (1952), 262 Wis. 299 302, 54 N.W.2d 907:
". . . the state may adopt proper regulations in the interests of the peace, safety, and welfare of its residents in the absence of a federal statute either dealing with or preempting the field, or unless the state regulation discriminates against persons engaged in interstate commerce or places an undue burden thereon. (citing cases)"
There is no question of preemption here: our concern is whether the proposed ordinance unduly burdens, or discriminates against, interstate commerce.
Every law that affects interstate commerce is not a prohibited regulation; although the police power cannot be used as a mere cover for regulation of interstate commerce. 15 C.J.S., Commerce, § 11, pp. 409, 411. The commerce clause is not an absolute guarantee of the right to sell whatever one may please, regardless of the effect on the local community; and it is not the mere fact of prohibition that determines the question, but what is forbidden, and for the protection of what interests. 15 C.J.S., Commerce, sec. 63, pp. 627-8. Each case, then, must be considered upon its own facts, and the basic question is whether the competing demands of the local and national interests involved can be accommodated. Metropolitan Finance Corp. v. Matthews (1953), 265 Wis. 275,279, 61 N.W.2d 502; quoting from United States v. South EasternUnderwriters Asso. (1944), 322 U.S. 533, 547, 64 S.Ct. 1162, 88 L.ed. 1440.
Courts in other jurisdictions have applied these rules in a variety of situations. A Virginia state law prohibiting the sale or transportation of paint, without prior registration and unless the containers were labeled in a certain way, was challenged by an out-of-state paint manufacturer in Lasting Products Co. v. Genovese (1955), 197 Va. 1,7 S.E.2d 811. The court upheld the law (which was passed to prevent deception and fraud) on the basis that it did not unduly burden or discriminate against interstate commerce, but affected it only incidentally. The U.S. Supreme Court had *Page 165 
earlier sustained (over similar "commerce clause" arguments) another Virginia statute requiring carriers transporting liquor through the state to (1) use the "most direct through route" and have in its possession a bill of lading showing the route to be used; (2) post a $1000 bond; and (3) possess a bill of lading showing the name of the consignee, and that the consignee had a legal right to receive the liquor at the stated destination. Carter v. Commonwealth (1944), 321 U.S. 131, 64 S.Ct. 464,88 L.ed. 605.
Ordinances prohibiting the use of certain city streets by trucks and buses have been held not to unduly burden interstate commerce, as have local laws setting limitations on truck weight. Commonwealth v. Kennedy
(1937), 129 Pa. Super. 149, 195 A. 770; Bakery Salvage Corp. v. City ofLackawanna, (1968), 291 N.Y.S. 2d 104.
A statute making it an offense to transport untaxed cigarettes within the state was upheld in State v. Sedacca (1969), 252 Md. 207, 249 A.2d 456,463, on the basis that it furthered the state's interest in preventing the diversion of cigarettes into "illegal channels of trade." The court noted that requiring interstate transporters to possess certain documents did not constitute a burden on interstate commerce. In Illinois CigaretteService Co. v. City of Chicago (7th Cir., 1937), 89 F.2d 610, 613, the court upheld as reasonable and non-burdensome a city ordinance prohibiting the sale and use of cigarette vending machines, stating that: "It is not for us to say that the desired end might be reached by a less burdensome ordinance." The "desired end" was keeping cigarettes out of the hands of children.
An ordinance prohibiting sale within the City of El Paso, Texas, of ice manufactured outside the city (unless made with distilled water) was upheld by the Supreme Court in City of El Paso v. Jackson (Tex., 1933), 59 S.W.2d 822, cert. den. 290 U.S. 680. A city ordinance prohibiting the sale of firearms as was similarly upheld in Cohen v. Bredenhoeft (S.D., Tex., 1968), 290 F. Supp. 1001, aff. 402 F.2d 61, cert. den.393 U.S. 1086, the court stating that the commerce clause does not exclude local exercise of the police power even though it may "materially affect" interstate *Page 166 
commerce. 290 F. Supp. at 1003-4. The ordinance's effect on interstate commerce was held to be incidental to the primary purpose of protecting the public. To a similar effect, the Missouri court sustained an ordinance regulating the kind of coal that could be used in the city inBallantine v. Nester (1942), 350 Mo. 58, 164 S.W.2d 378. A local prohibition of billboard advertising of tobacco was upheld in PackerCorp. v. Utah (1932), 285 U.S. 105, 52 S.Ct. 273, 76 L.ed. 643. In Luzierv. State Board of Health (1933), 189 Minn. 151, 248 N.W. 664, a "beauty law" which made it impossible for the plaintiff cosmetic manufacturer's salesmen to give demonstrations within the State of Minnesota, was upheld over a "burden on interstate commerce" challenge. A "Buy American" ordinance was similarly upheld in American Institute for Imported Steelv. Erie County (1968), 297 N.Y.S. 2d 602, and a state law prohibiting the use of the word "halibut" on packages without additional descriptive adjectives was approved in Atlantic Ocean Products, Inc., v. Leth (D.C., Ore., 1968), 292 F. Supp. 615, affirmed 393 U.S. 127.
In recent years, newly-felt societal needs have led to regulation in many new areas which materially affect interstate commerce. Local gun control laws, for example, have been sustained on the basis that they are ". . . not primarily aimed at interstate commerce, and the fact that they may, to some extent, affect interstate commerce is of no consequence with respect to the issue of constitutionality." Burton v. Sills (1968),99 N.J. Super. 516, 240 A.2d 462, 467; affirmed 240 A.2d 433, appeal dismissed 394 U.S. 812. See also Photos v. City of Toledo (1969),19 Ohio Misc. 147, 250 N.W.2d 916, and Cohen v. Bredenhoeft, supra.
Finally, local laws and restrictions designed to enhance environmental quality have withstood "commerce clause" attacks. The California court has, for example, held that a state can prohibit the possession or importation of fish or game taken outside the state when the legislature determines such action is necessary to protect the local ecology. Adamsv. Shannon (1970), 86 Cal. Rptr. 641. The New Jersey court has upheld local aircraft noise standards over similar objections in Township ofHanover v. Town of Morristown *Page 167 
(1969), 108 N.J. Super. 461, 261 A.2d 692, 701 stating:
"The burden on interstate commerce is patently excessive only if the pattern of local regulation presents so acute conflict that aircraft cannot possibly comply with all standards and continue interstate flight."
In 1960, the City of Detroit passed a smoke abatement ordinance. The provisions of the ordinance made it impossible for certain steamships to perform necessary cleaning of their fires within the city unless the ships were structurally altered. The corporate owner of several such ships challenged the ordinance, and the court upheld it, stating generally that (362 U.S. at 443-4):
"In determining whether the state has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution when `conferring upon Congress the regulation of commerce, . . . never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. * * *'"
After noting that the ordinance did not exclude vessels from the Port of Detroit, nor destroy the right of free passage, the court concluded (362 U.S. at 448):
"The claim that the Detroit ordinance, * * * imposes as to the appellant's ships an undue burden on interstate commerce needs no extended discussion. State regulation, based on the police power, which does not discriminate against interstate commerce or operate to disrupt its required uniformity, may constitutionally stand. (citing cases)
"It has not been suggested that the local ordinance, applicable alike to `any person, firm or corporation' within the city, discriminates against interstate commerce as such. It is a regulation of general application, designed to better the health and welfare of the community. * * *"
The decision of the U.S. Supreme Court in a Wisconsin case, Dean MilkCo. v. City of Madison (1951), 340 U.S. 349, 71 S.Ct. 295, 95 L.ed. 329, has been raised as a possible *Page 168 
bar to a "can-ban" ordinance. In that case, a Madison city ordinance made it unlawful to sell any milk in the city unless it had been bottled within five miles of the city's central square. The court struck down the ordinance as violative of the commerce clause. A close reading of that case, however, reveals that the court based its decision largely on the fact that the ordinance discriminated against out-of-state industries in favor of local industry:
"* * * In thus erecting an economic barrier protecting a major local industry against competition from without the State, Madison plainly discriminates against interstate commerce. This it cannot do, * * *."340 U.S. at 354.
That discrimination was a decisive point in Dean Milk is borne out by the court's statement in a later case, Breard v. City of Alexandria (1951),341 U.S. 622, 636, 71 S.Ct. 920, 95 L.ed. 1233, that "It was partly because the regulation in Dean Milk Co. discriminated against interstate commerce that it was struck down."
The Breard case involved a challenge to a city ordinance prohibiting all door-to-door sales except by invitation of the homeowner. The action was brought by a national magazine subscription salesman who claimed, among other things, that the ordinance imposed an undue and discriminatory burden on interstate commerce. The court rejected this argument, stating (341 U.S. at 637-8, 640-1):
"We recognize the importance to publishers of our many periodicals of the house-to-house method of selling by solicitation. As a matter of constitutional law, however, they in their business operations are in no different position so far as the Commerce Clause is concerned than the sellers of other wares. * * * the usual methods of seeking business are left open by the ordinance. That such methods do not produce as much business as house-to-house canvassing is, constitutionally, immaterial * * *. Taxation that threatens interstate commerce with prohibition or discrimination is bad, * * * but regulation that leaves out-of-state sellers on the same basis as local sellers cannot be invalid for that reason. *Page 169 
"* * *
"* * * When there is a reasonable basis for legislation to protect the social, as distinguished from the economic, welfare of a community, it is not for this Court because of the Commerce Clause to deny the exercise locally of the sovereign power of Louisiana. Changing living conditions or variations in the experiences or habits of different communities may well call for different legislative regulations as to methods and manners of doing business. Powers of municipalities are subject to control by the states. Their judgment of local needs is made from a more intimate knowledge of local conditions than that of any other legislative body. We cannot say that this ordinance of Alexandria so burdens or impedes interstate commerce as to exceed the regulatory powers of that city."
The Wisconsin Supreme Court has followed the general rules stated above in the relatively few cases dealing with interstate commerce. See Meyersv. Matthews (1955), 270 Wis. 453, 461, 71 N.W.2d 368, appeal dismissed350 U.S. 138; State v. Helwig, supra; Forest Home Dodge, Inc. v. Karns
(1965), 29 Wis.2d 78, 94, 138 N.W.2d 214.
Included in the few Wisconsin cases of note (other than the milk trade cases culminating in Dean Milk Co. v. City of Madison, supra) are those upholding statutory and administrative prohibitions on "price advertising" of eyeglasses. See Bedno v. Fast (1959), 6 Wis.2d 471, 95 N.W.2d 396, andRitholz v. Ammon (1942), 240 Wis. 578, 4 N.W.2d 173. In the latter case, the court stated (240 Wis. at 588-9):
"* * * While under the cover of exercising its police power Wisconsin cannot undertake what amounts to regulation of interstate commerce, police regulations, reasonable in themselves, addressed to local activities and bearing a genuine relation to the welfare of people of this state, are not invalid by reason of the fact that they incidentally affect interstate commerce."
The court has also upheld a state law setting maximum lengths for vehicles using Wisconsin highways. The law was held to be a reasonable regulation of commerce over the objections *Page 170 
of interstate automobile haulers who would have to make extensive changes to their trucks in order to comply. State v. Wetzel (1932), 208 Wis. 603,243 N.W. 768. A "ton-mile" tax on trucks — both intrastate and interstate — was held not to be an excessive burden on interstate commerce in Wis.Truck Drivers Asso. v. Public Service Comm. (1932), 207 Wis. 664,242 N.W. 668. In Chicago, M. St. P. P. R. Co. v. Public Service Comm. (1951), 260 Wis. 212, 50 N.W.2d 416, the court held that a state requirement that a certain interstate railroad stop its trains at particular local stations which lacked adequate service, did not unduly burden interstate commerce nor violate due process.
Determining whether a given local regulation constitutes an undue burden on interstate commerce involves a "balancing" of many factors bearing upon the reasonableness of the burden in light of local and national interests. See Southern Pacific Co. v. Arizona (1945),325 U.S. 761, 65 S.Ct. 1515, 89 L.ed. 1915. Soft drinks, for example, are generally bottled locally and a glance at a supermarket shelf quickly reveals that most, if not all, major soft drink brands are packaged in both returnable and non-returnable containers. The courts surely will have to make the ultimate determination by balancing these and the many other factors affecting the reasonableness of the regulation — both as to the initial exercise of police power and also the burden on interstate commerce. I do not have these many factors before me, nor am I the proper one to weigh them.
The ordinance is one of general application and is not an attempt to discriminate against out-of-state (or out-of-county) businesses in order to promote local industry, as in Dean Milk Co. v. City of Madison, supra. It is not, as in Edwards v. California (1941), 314 U.S. 160, 62 S.Ct. 164,86 L.ed. 119, an attempt on the part of a municipality to isolate itself from difficulties common to all. It is rather an attempt to meet a crucial local problem head-on, much as California did in 1968 when it adopted motor vehicle exhaust emission standards that forced cars sold within that state to possess special equipment. Wisconsin's long-lived ban on the sale of colored oleomargarine, and its continuing (although somewhat relaxed) lottery regulations which prohibit *Page 171 
Wisconsin residents from entering certain nationwide contests are other, less crucial, examples of valid police power regulations which constitute permissible burdens on interstate commerce. The state legislature, moreover, has recognized the "local" nature of soft drink bottling in secs. 66.053 and 66.054, Stats., which permit local regulation and licensing of such businesses.
Given the above authorities, and the presumption of validity attaching to all legislative acts, I cannot say that a local ordinance prohibiting the sale of non-returnable containers within a county would place an unreasonable burden on interstate commerce. There are, I am sure, thousands of factors which could tip the balance between a reasonable and an unreasonable burden to one side or the other. Consequently, this opinion is anything but a blanket approval of such ordinances it is merely a recognition that, carefully drawn, and their reasonableness amply documented, they would not violate the commerce clause of the U.S. Constitution and would constitute a valid exercise of the police powers.
III. Due Process and Equal Protection
The fault of the proposed Richland County ordinance is not in its objectives or even in its regulatory theory. The ordinance is, in my opinion, unconstitutionally vague and discriminatory in violation of the due process and equal protection clauses of the Fourteenth Amendment. Its prohibitory language, for example, refers to "what is commonly known today as the non-deposit throw-away carbonated soda pop bottle or commonly known as the non-deposit throw-away beer bottle. . . ." Taken literally, the ordinance would discriminate against uncarbonated pop bottles and the growing "canned" pop and beer. While it may well be permissible to discriminate against soft drink and beer containers because of their comparative volume sales, it would be difficult indeed to discriminate between non-returnable bottles and cans, insofar as the objects of the legislation are concerned. Due process requires that police power ordinances which attempt to regulate only certain classes *Page 172 
of activities or, as in this case, certain classes of goods, must meet several criteria — among them the criterion that the classification must be based upon substantial distinctions, germane to the purpose of the law, which make one class "really different from another." State ex rel.Ford Hopkins Co. v. Mayor (1937), 226 Wis. 215, 221-2, 276 N.W. 311. This the proposed ordinance does not do, and, as a result cannot be sustained.
RWW:WFE