99 N.J. Super. 516 (1967)
240 A.2d 462
L. ARTHUR BURTON, LOUIS A. BENTON, EDMOND H. SHULER, AL L. TOTH, HERMAN TREPTOW, GEORGE SCHIELKE AND CITIZENS COMMITTEE FOR FIREARMS LEGISLATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
ARTHUR J. SILLS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, AND COLONEL DAVID B. KELLY, SUPERINTENDENT OF STATE POLICE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 10, 1967.
*519 Mr. William E. Ozzard, attorney for plaintiffs (Messrs. Beekman, Ozzard & Mauro, attorneys).
*520 Mr. Arthur J. Sills, Attorney General of State of New Jersey, attorney for defendants (Mr. John W. Hayden, Jr. appearing).
LEAHY, J.C.C. (temporarily assigned).
This is a motion for summary judgment brought by defendants Arthur J. Sills, Attorney General of New Jersey, and Colonel David B. Kelly, Superintendent of the New Jersey State Police, seeking an order dismissing, with prejudice, the complaint of plaintiffs L. Arthur Burton, Louis A. Benton, Edmond H. Shuler, Al L. Toth, Herman Treptow, George Schielke and the Citizens Committee for Firearms Legislation, a corporation of the State of New Jersey, or for such other relief as the court may grant.
The complaint demands judgment: (a) temporarily enjoining defendants and each of them, their agents and servants, pending the final determination of this cause, from enforcing or in any manner implementing the enforcement of the provisions of chapter 60 of the Laws of 1966; (b) permanently enjoining such enforcement; (c) declaring chapter 60 unconstitutional and void, and (d) seeking such other relief as to the court may seem just and proper.
Request (a) was disposed of by the Appellate Division when it entered an order reversing the trial court's issuance of an interlocutory injunction.
The main thrust of the complaint concerns that part of the statute bringing rifles and shotguns within its purview. It might be pointed out that these items were subject to certain statutory provisions prior to the enactment of chapter 60. See N.J.S. 2A:151-2, 5 through 9, and 19 through 23. The new law extends the regulation of rifles and shotguns to sales. N.J.S. 2A:151-32 et seq., the carrying on of nonexempted activities, N.J.S. 2A:151-41, and the licensing of retail dealers, N.J.S. 2A:151-24 et seq.
Plaintiffs assert in their complaint, among other things, that the Superintendent of State Police's power to prescribe certain standards for manufacturers, wholesalers and retailers *521 of firearms is without limits set by the Legislature; the standards set forth in the statute, which an applicant for a firearms purchaser card must meet, are not established with sufficient clarity, but are left to the discretion of the local chief of police; the provisions for disqualification of an applicant do not set forth adequate standards for police officials to follow; the statute fails to protect the rights of individuals dealt with; the statute impedes the hunters' safety program in New Jersey; the requirement that an applicant give detailed information to the authorities is an invasion of privacy; the statute interferes with the flow of interstate commerce; it violates plaintiffs' rights under the First, Second, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution; and finally, the statute violates plaintiffs' rights under Article I of the Constitution of the State of New Jersey.
Plaintiffs complain that standards and qualifications are to be prescribed by the Superintendent of State Police for manufacturers, wholesalers, and retail dealers of firearms, and that he is given broad powers without legislative direction or specification. N.J.S. 2A:151-19 provides that as to manufacturers and wholesalers:
"The superintendent shall prescribe standards and qualifications for registration of manufacturers and wholesalers of firearms, for the protection of the public safety, health and welfare. If the superintendent is satisfied that an applicant for registration cannot be permitted to carry on business as a manufacturer or wholesale dealer in firearms without danger to the public health, safety or welfare, he may refuse to register the applicant."
N.J.S. 2A:151-24 provides that:
"The superintendent shall prescribe standards and qualifications for retail dealers of firearms for the protection of the public safety, health and welfare."
The question to be decided is whether these standards are reasonable, constitutional and valid.
*522 Our Supreme Court, in Elizabeth Federal S. & L. Ass'n v. Howell, 30 N.J. 190, 194 (1959), determined that the "public interest" was a valid standard. And in In Re Greenville Bus Company, 17 N.J. 131 (1954), the court held that the terms "public convenience" and "public interest," although general in nature, were sufficient to guide administrative authority and to satisfy constitutional requirements.
In Moyant v. Borough of Paramus, 30 N.J. 528 (1959), the court, in speaking of adequate standards, sustained the validity of an ordinance empowering the chief of police to issue peddlers' permits upon a showing that the applicant's business and moral character were satisfactory. The court held that it was not necessary to set forth explicit standards if they could be inferred from the entire ordinance, and that the standard of promotion of health, morals and general welfare set forth in N.J.S.A. 40:48-2 was not so vague a directive to municipal authorities as to be unconstitutional. In Ward v. Scott, 11 N.J. 117, 123 (1952), the court stated:
"The exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulatory enactments under the police power."
In cases where there has been a question in regard to standards, the courts have weighed the inability of the Legislature to promulgate precise standards against the objectives of the designated acts. Where the legislative objectives are clear, the delegation of authority is valid provided that protection from the arbitrary and unreasonable acts of the administrator is available through judicial review. Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524 (1930); New York Central Securities Corp. v. United States, 287 U.S. 12, 53 S.Ct. 45, 77 L.Ed. 138 (1932); NBC v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943); Jones v. Haridor Realty Corp., 37 N.J. 384, 391 (1962). The instant statute, in N.J.S.A. 2A:151-21, 24, 34, and 44.1, provides such a means of appeal.
*523 Plaintiffs claim that the act disqualifies applicants on the basis of drunkeness without setting forth any standards to guide officials in determining drunkeness and the degree thereof. The statute actually provides that no pistol or revolver purchase permit for firearms or purchase identification card shall be issued to any person "who is presently a habitual drunkard." The term "habitual drunkard" was defined in Northwestern Mutual Life Insurance Co. v. Muskegon National Bank, 122 U.S. 501, 507, 7 S.Ct. 1221, 1224, 30 L.Ed. 1100 (1887): "if you find that the habit and rule of a man's life is to indulge periodically and with frequency, and with increasing frequency and violence, in excessive fits of intemperance, such a use of liquor may properly cause the finding of habitual drunkenness." This is certainly a sufficient standard to guide administrators.
Plaintiffs also contend that the statute provides for disqualification of applicants on the basis of addiction to narcotics and habitual use of "goof balls" or "pep pills" without setting forth any definitions to guide the determination of officials charged with administration thereof. "Narcotic drugs" are defined in R.S. 24:18-2, and the term "addiction to narcotics" has never presented difficulty to the judiciary. See Boyd v. United States, 271 U.S. 104, 46 S.Ct. 442, 70 L.Ed. 857 (1926).
While it is true that the terms "pep pills" and "goof balls" are colloquial, nevertheless they are already the subject of legislation: N.J.S. 2A:170-77.8. These terms have been used by the New Jersey courts. See State v. Wolak, 26 N.J. 464 (1958). Any habitual use thereof is readily determined by investigating authorities.
Plaintiffs argue that the disqualification of an applicant on the basis of mental disorder does not establish any standards to guide the determination of officials charged with administration thereof. N.J.S. 2A:151-33(a) and (b) refers to (a) one confined in a hospital, mental institution or sanitarium, and (b) to one who has ever been confined for a mental disorder, but allows such person to overcome *524 disqualification by producing a certificate of a medical doctor or psychiatrist licensed in New Jersey, or other satisfactory proof that he is no longer suffering from that particular disability in a manner that would interfere with or handicap him in the handling of firearms.
As to the plaintiffs' contention that the statute provides for disqualification of an applicant solely for holding political and social beliefs, without any evidence that a crime or anti-social act has been committed, planned or contemplated, the answer is that no such provision exists in the statute. The provision in the application form which requires the applicant to set forth whether or not he presently or ever has been a member of any organization which advocates or approves the commission of acts of force and violence, either to overthrow the government of the United States or of this State, or who seeks to deny others their rights under the Constitution of either the United States or the State of New Jersey, is information that would be needed by the issuing authority to ascertain whether issuance would be in the interest of the public health, safety or welfare.
Plaintiffs maintain that the statute, in providing for the revocation of a permit, and also for the denial of a permit in the future to anyone who has had a permit revoked, fails to give full protection to the rights of the individuals so dealt with. It is true that N.J.S. 2A:151-44 prior, to its present amendment, provided that no person whose permit had been revoked would thereafter be issued any permit under the provisions of the article, N.J.S. 2A:151-1 et seq. However, it may be noted that the revised form of N.J.S. 2A:151-45 provides for revocation after hearing upon notice and a finding that the permit holder no longer qualifies for the issuance of a permit, but makes no provision indicating that a future application may not be made and a permit issued, if the applicant is qualified at that time.
Plaintiffs further contend that the statute attempts to set certain conditions for the possession and use of a *525 rifle or shotgun by a minor and interferes with the rights of an individual and hampers the safety program in the State of New Jersey. It is obvious to the court that, if anything, the statute provides for increased safety measures.
Plaintiffs also contend that the statute provides that an applicant for a firearms purchaser identification card must be fingerprinted and investigated, and give detailed intimate information about himself to the chief police official or superintendent as hereinabove recited, all in derogation of his rights and privacy. It is within the police power of the Legislature to authorize the Superintendent of State Police or a local chief of police to inquire into the background of those seeking to carry, transport or traffic in guns. Public health and safety are dependent upon who carries, purchases, and traffics in guns. As to fingerprints, it has been held in this State that the taking of fingerprints is not a violation of the Fifth Amendment. See State v. King, 44 N.J. 346 (1965).
There can be no doubt that under certain circumstances the interest of the State in the protection of the public safety, health and welfare outweighs individual rights in connection with divulging associations or associational privacy. See Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Membership in certain organizations is relevant to the question of character and would assist the investigating authority in determining whether issuance would be in the public interest.
Cases cited to the court, interpreting the First Amendment and involving oaths required of employees and school teachers, which oaths result in their being deprived of their livelihood in the event they do not subscribe to them, are inapposite. We are not dealing here with a subject as delicate and fundamental as marital privacy (Griswold, supra) or a situation as economically vital to the individual citizen as holding employment. There are no sanctions here against persons who choose not to furnish the required information. Certainly the State should know if an applicant for a permit *526 to purchase or to carry firearms is a member of an association that advocates the forceful overthrow of either the government of the United States or of this State, and while he may have a right to join and participate in activities leading to that end, he certainly does not have the right superior to the power of the State as sovereign, to carry a firearm in the course of engaging in such activity.
Plaintiffs also argue that the new law restricts the ability of nonresidents to purchase rifles and shotguns in New Jersey, and so interferes with the flow of interstate commerce and with the rights of dealers to do business within and without the State. The regulation in question is not primarily aimed at interstate commerce, and the fact that it may, to some extent, affect interstate commerce is of no consequence with respect to the issue of constitutionality. Nonresident purchasers are not discriminated against. If they wish to purchase firearms in New Jersey, they must go through the same procedures as New Jersey residents, outlined in N.J.S. 2A:151-34. In the absence of conflicting legislation by Congress there is a residuum of power in the State to make laws governing matters of local concern which, nevertheless, in some measure affect interstate commerce, or even to some extent regulate it. Cooley v. Board of Wardens, 12 How. 299, 30 L.Ed. 996 (1851), and First National Benevolent Society v. Garrison, 58 F. Supp. 972 (D.C. 1945), affirmed 155 F.2d 522 (9 Cir. 1946).
N.J.S. 2A:151-34, even before it was amended, restricted the sales of pistols and revolvers, just as it does today. The only difference in the new law is that the section was supplemented to provide for a firearms purchaser identification card for the purchase of rifles and shotguns. The court fails to see any constitutional distinction between this restriction and the restrictions on the sale of rifles and shotguns. The court can conceive of no matter more concerned with public safety, health and welfare of the State of New Jersey than that the indiscriminate purchase and *527 use of firearms, and the regulation thereof should be subject to the police power of the State.
The essence of the Second Amendment of the United States Constitution is that it recognizes the right of the citizenry to organize militias and thus establish their safety from federal encroachment. The Gun Law in no way trespasses on a citizen's right to bear arms as guaranteed by the Second Amendment. The approach to the Second Amendment expressed here has been adopted by the judiciary in Cases v. United States, 131 F.2d 916 (Puerto Rico 1 Cir. 1942), certiorari denied 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718 (1942), rehearing denied 324 U.S. 889, 65 S.Ct. 1010, 89 L.Ed. 1437 (1942).
Plaintiffs' contention that they possess a personal, individual constitutional "right" to bear arms is without merit. Established judicial precedent and historical interpretation are to the contrary. This also applies to any claim of "infringement" of this "right"; that question was settled in United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588 (1875), where the court said:
"The Second Amendment declares that it shall not be infringed; but this, as has been seen, means no more than that it shall not be infringed by Congress. This is one of the amendments that has no other effect than to restrict the powers of the national government." (at p. 553)
This view was upheld in Presser v. State of Illinois, 116 U.S. 252, 6 S.Ct. 580, 29 L.Ed. 615 (1886), and Miller v. State of Texas, 153 U.S. 535, 14 S.Ct. 874, 38 L.Ed. 812 (1894).
It is clear from all the foregoing authorities that the Second Amendment merely protects against unwarranted extensions of federal power and does not bar a state government from enacting regulations concerning the use and possession of arms.
It is well established that summary judgment may be granted where there are no palpable issues of fact so that *528 the final determination of the case is a matter of law. See R.R. 4:58-3. The court finds no issue of fact involved. It finds the statute in question to be constitutionally regulatory, with the proper provisions for appeal, and not prohibitory. Defendants' motion for summary judgment is granted.