

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-1998

# Tamarind Resort v. Govt of V.I.

Precedential or Non-Precedential:

Docket 97-7020

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"Tamarind Resort v. Govt of V.I." (1998). *1998 Decisions.* Paper 41.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/41

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 9, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7020

TAMARIND RESORT ASSOCIATES, A U.S. Virgin Islands
Joint Venture consisting of TAMARIND RESORT
CORPORATION, a Delaware Corporation, CULLIGAN
PORSCHE, INC., a New York Corporation

v.

GOVERNMENT OF THE VIRGIN ISLANDS

Tamarind Resort Associates ("TRA"),

      Appellants

Appeal from the District Court of the Virgin Islands
(Division of St. Thomas)
(D.C. Civ. No. 95-cv-00010)

Argued
December 9, 1997

Before: SLOVITER, STAPLETON and MANSMANN,
Circuit Judges.

(Filed March 9, 1998)

George H.T. Dudley, Esquire
Henry L. Feuerzeig, Esquire
Charles E. Engeman, Esquire
Dudley, Topper & Feuerzeig
Law House
1A Frederiksberg Gade
Charlotte Amalie, St Thomas
USVI 00804

Everett C. Johnson, Jr., Esquire
  (ARGUED)
Leonard A. Zax, Esquire
Mary E. Britton, Esquire
Latham & Watkins
1001 Pennsylvania Avenue, N.W.
Suite 1300
Washington, D.C. 20004

 COUNSEL FOR APPELLANT
 TAMARIND RESORT

Julio A. Brady, Esquire
Paul L. Gimenez, Esquire
Gary M. Alizzeo, Esquire (ARGUED)
Office of Attorney General of
 Virgin Islands
Department of Justice
48B-50 Kronprindsens Gade
Charlotte Amalie, St Thomas
USVI 00802

 COUNSEL FOR APPELLEE

OPINION OF THE COURT

MANSMANN, Circuit Judge.

After the Government of the Virgin Islands denied Tamarind Resort Associates ("TRA") a Coastal Zone Management Act ("CZMA") permit in order to develop Hans Lollik Island, TRA brought suit against the Government in the District Court of the Virgin Islands alleging breach of contract, temporary and permanent unconstitutional

takings, and violation of TRA's constitutional rights to due process and equal protection. The district court granted summary judgment for the Government on the breach of contract claim and, treating the constitutional claims as an administrative writ of review, affirmed the Board of Land Use Appeals' decision denying TRA a coastal zone permit.

In this appeal, we are asked to determine whether summary judgment was appropriate on TRA's breach of contract claim. In addition, we must examine the extent to which the District Court of the Virgin Islands has jurisdiction to decide writs of review and determine if the district court erred in reviewing TRA's constitutional claims in its appellate capacity.

Because we agree with the district court that the agreement is unambiguous and that the Government did not breach the agreement by applying the CZMA to TRA, we will affirm the district court's grant of summary judgment on the breach of contract claim. With respect to the remaining constitutional claims, however, we find that the district court erred in treating those claims as a writ of review and therefore will remand for the district court to consider TRA's constitutional claims under its original, federal question jurisdiction.

I.

Great Hans Lollik Island is a 500 acre uninhabited island located approximately two miles off the coast of St. Thomas. In 1964, when the Island was owned by Hans Lollik Corporation, the Corporation and the Government of the Virgin Islands entered into an agreement which was enacted into law as Act No. 1145, 1964 V.I. Sess. Laws 120, and amended by Act No. 1327, 1965 V.I. Sess. Laws 47, and Act No. 1883, 1967 V.I. Sess. Laws 53. The agreement contains a provision identifying it as "contractual and proprietary in nature."1

_____

1. The district court applied principles of contract interpretation rather than canons of statutory construction in interpreting the agreement pursuant to our rationale in West Indian Co., Ltd. v. Government of the Virgin Islands, 844 F.2d 1007, 1016–17 (3d Cir. 1988). The parties have not disputed this ruling on appeal. For the reasons articulated by the district court, we also will interpret the agreement under basic contract principles.

Under the agreement, the Government approved "the use of Hans Lollik Island for the purposes of a Hotel, Marina and Housing Project" and provided for the lease of certain Government land to construct a marina and related facilities. The agreement states that the initial development objective is to construct a hotel "with accommodations for no less than fifty (50) rooms . . . together with a further development plan calling for the construction of approximately one hundred and fifty (150) major residences." The agreement also contains language that mirrors the Contract Clause of Article I, S10, cl. 1 of the United States Constitution which states that "the Government will not adopt any legislation impairing or limiting the obligations of this contract."

In October of 1978, the Government enacted the Virgin Islands Coastal Zone Management Act, V.I. Code Ann. tit. 12, SS 901–914 (1982 & Supp. 1997) in order to harmonize the goals of environmental protection and economic development. V.I. Code Ann. tit. 12, S 903(b)(1)–(11); see also Virgin Islands Conservation Soc'y, Inc. v. Virgin Islands Bd. of Land Use Appeals, 881 F.2d 28, 29 (3d Cir. 1989). The general purpose of the CZMA was to set up a comprehensive program for the management, conservation, and orderly development of the coastal area. West Indian Co., Ltd. v. Government of the Virgin Islands, 844 F.2d 1007, 1011 (3d Cir. 1988); see also V.I. Code Ann. tit. 12, S 903(b)(4). Under the CZMA, development of the coastal zone may only be accomplished by obtaining a permit from the Coastal Zone Management Commission ("CZMC"). V.I. Code Ann. tit. 12, SS 904 and 910. The CZMA also provides, however, that "[n]othing herein contained shall be construed to abridge or alter vested rights obtained in a development in the first tier coastal zone prior to the effective date of [this Act]." V.I. Code Ann. tit. 12, S 905(f). Hans Lollik Island is located in the first tier coastal zone and is subject to CZMA restrictions absent a vested right in development obtained prior to February 1, 1979, the effective date of the CZMA.

TRA is a joint venture established in the Virgin Islands comprised of Tamarind Resort Corporation, a Delaware corporation, and Culligan Porsche, Inc., a New York

corporation. In 1990, TRA purchased Hans Lollik Island. TRA is the successor-in-interest to the 1964 agreement between the Government and Hans Lollik Corporation.

TRA developed a plan to construct an 800-unit resort on the island including a 150 unit hotel. TRA submitted an application to the CZMC for a permit. The CZMC rejected TRA's application. TRA thereafter submitted a plan for a 675-unit development, including a 150 unit hotel and 525 residences consisting of 160 major residences and 365 villas or condominium-style homes.

The CZMC held public hearings on TRA's revised plan at which many speakers voiced opposition to the development. The CZMC ultimately denied TRA a permit for construction of the 675-unit proposal in a detailed decision setting forth its extensive findings and conclusions.

TRA appealed the CZMC decision to the Board of Land Use Appeals. The Board affirmed the CZMC's decision rejecting TRA's permit application. TRA then brought this action against the Government in the District Court of the Virgin Islands asserting claims for breach of contract, temporary and permanent unconstitutional takings, and violation of TRA's constitutional rights to due process and equal protection. TRA moved for summary judgment on the breach of contract and the due process and equal protection claims and the Government cross moved for summary judgment on all claims. The district court granted summary judgment in favor of the Government on TRA's breach of contract claim and, treating TRA's remaining constitutional claims as an administrative writ of review, affirmed the Board of Land Use Appeals' decision denying TRA's permit application. This timely appeal followed.

II.

We review the district court's order granting summary judgment on TRA's breach of contract claim de novo. Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743 (3d Cir. 1996).

5

A.

Under the law of the Virgin Islands, interpretation of an integrated agreement is to be determined as a question of law by the court if it does not depend on the credibility of extrinsic evidence or a choice of reasonable inferences to be drawn from extrinsic evidence.2 Restatement (Second) of Contract S 212(2) (1981). Any determination as to meaning should be made in light of the relevant evidence, but after the transaction has been examined in its entirety, the words of an integrated agreement are the most important evidence of intention. Id. at S 212, cmt. b. It is axiomatic that where the language of a contract is clear and unambiguous, it must be given its plain meaning. Id. at S 202(3)(a).

In addition, "[i]t is a fundamental principle of contract law that `disputes involving the interpretation of unambiguous contracts are resolvable as a matter of law, and are, therefore, appropriate cases for summary judgment.' " Hadley v. Gerrie, 124 B.R. 679, 683 (D.V.I.), aff 'd, Gas House, Inc. v. Unicorp American Corp., 952 F.2d 1392 (3d Cir. 1991)(table decision)(citing Reed, Wible and Brown v. Mahogany Run Dev. Corp., 550 F. Supp. 1095, 1099 (D.V.I. 1982)). We have consistently embraced the basic common law principle that a contract is unambiguous if it is reasonably capable of only one construction. See, e.g., Sumitomo Mach. Corp. of America, Inc. v. AlliedSignal, Inc., 81 F.3d 328, 332 (3d Cir. 1996);

_____

2. The agreement does not provide what law governs its interpretation, but because the agreement relates to property within the Virgin Islands, was performed in the Virgin Islands, and was entered into by the Government of the Virgin Islands, we will apply Virgin Islands law. The Virgin Islands Code establishes the sources of law for the Islands as follows:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to
> the contrary.

V.I. Code Ann. tit. 1, S 4 (1967).

American Flint Glass Workers Union, AFL–CIO v. Beaumont Glass Co., 62 F.3d 574, 581 (3d Cir. 1995). We therefore will affirm a grant of summary judgment in a breach of contract action only where the contract is unambiguous and the moving party is entitled to judgment as a matter of law.

B.

TRA bases its breach of contract claim on the assertion that the Government breached the agreement by requiring TRA to obtain a CZMA permit prior to developing Hans Lollik Island. TRA contends that in applying the CZMA to TRA, the Government impaired TRA's rights under the agreement in breach of its covenant to refrain from adopting any legislation impairing or limiting the obligations of the agreement. In order to determine whether application of the CZMA impairs TRA's contractual rights for purposes of summary judgment, we must first determine what rights the agreement grants TRA and/or whether the agreement is ambiguous as to the contractual rights to which TRA is entitled.

The agreement contemplates an initial development on Hans Lollik Island of a hotel with a minimum offifty rooms and approximately one hundred and fifty major residences. In addition, the agreement provides that:

> In regard to questions of land use and the zoning laws, the Government has satisfied itself and does hereby determine that the use of the respective sites in question for purposes of a Hotel, Marina and Housing Project are approved. The Government will further, consistent with the public interest, issue such certificates, licenses and permits and take such other action as may be required of it under any safety, health and related laws, and any rulings and regulations in connection therewith.

The Government contends that the agreement granted TRA the right to use the Island for purposes of a Hotel, Marina, and Housing Project, but that the agreement did not grant TRA unlimited discretion to develop the Island for that use. By contrast, TRA contends that the Government granted it

7

a vested right to develop Hans Lollik Island on any scale above the specified minimum levels contemplated by the agreement. We find TRA's interpretation of the agreement to be unreasonable.

Prior to the agreement, Hans Lollik Island was zoned as R-10 under the Virgin Islands Zoning and Subdivision Act which permitted one or two family residential use only. Under the plain language of the agreement, the Government granted TRA an exception to the R-10 zoning classification by approving the use of the Island for purposes of a Hotel, Marina, and Housing Project. In light of the entire transaction between the parties, the only reasonable interpretation of the agreement is that it granted TRA the right to use the property for commercial purposes but did not grant TRA unlimited discretion to develop the property for that use.

This interpretation is further supported by the fact that the Government only agreed to issue necessary permits for development if the proposed development was consistent with the public interest. Under TRA's interpretation of the agreement, the Government would have no discretion to deny TRA the appropriate permits for development. Were we to accept TRA's interpretation, the phrase `consistent with the public interest' would be rendered nugatory, which is an interpretation to be avoided. See Restatement (Second) of Contracts S 203(a)(1981)(stating that "an interpretation which gives . . . effective meaning to all the terms is preferred to an interpretation which leaves a part .. . of no effect").

In addition, the plausibility of TRA's interpretation is further undermined by the agreement's silence on discretional development limits. For example, while the agreement contemplates the development of a hotel with a minimum of fifty rooms and approximately one hundred and fifty major residences, the agreement does not set a maximum size limit. The agreement, however, does contain an integration clause which specifies that the agreement "constitutes the entire agreement of the parties." It is therefore evident from the agreement that the parties had no understanding as to a maximum level of development.

8

The agreement's silence on a maximum development level, however, does not indicate, as TRA contends, that TRA was granted unlimited discretion to develop the Island. Both parties have relied on United States v. Winstar Corp., 116 S. Ct. 2432 (1996), to support their respective positions on this point. Winstar construed the unmistakability doctrine, a canon of contract construction which provides that "a contract with a sovereign government will not be read to include an unstated term exempting the other contracting party from the application of a subsequent sovereign act." Winstar, 116 S. Ct. at 2456. It is somewhat unclear after the Winstar plurality opinion as to the type of contract to which the unmistakability doctrine applies. See Yankee Atomic Elec. Co. v. United States, 112 F.3d 1569, 1578–79 (Fed. Cir. 1997)(noting that plurality found the doctrine inapplicable to risk of loss shifting contracts but that remaining five justices agreed that the doctrine's application is unrelated to the nature of the underlying contract). It is clear, however, that one of the basic principles underlying the doctrine is the concern that it would be unreasonable to presume, in the absence of an express contractual provision, that a sovereign intended a contractual waiver of a basic sovereign power. See generally Winstar, 116 S. Ct. at 2477 (Scalia, J., concurring)(stating that "[w]hen the contracting party is the government . . . it is simply not reasonable to presume . . . that the sovereign [promises] that none of its multifarious sovereign acts, needful for the public good, will incidentally disable it or the other party from performing one of the promised acts."); Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 148 (1982)("[t]o presume that a sovereign forever waives the right to exercise one of its sovereign powers unless it expressly reserves the right to exercise that power in a commercial agreement turns the concept of sovereignty on its head, and we do not adopt this analysis.").

Based on this basic principle and under the specific facts of this case, we find TRA's position that the Government granted TRA unlimited discretion to develop the Island, thereby relinquishing its power to regulate that development, to be unreasonable in light of the fact that the agreement does not contain any language to that effect. Accordingly, because the agreement does not speak to a

maximum limitation on development and does not explicitly or implicitly grant TRA the right of unlimited development, the Government was at liberty to restrict TRA's development by applying the CZMA to TRA.3

Our decision in West Indian Co., Ltd. (WICO) v. Government of the Virgin Islands, 844 F.2d 1007 (3d Cir. 1988) is instructive on this point. In WICO, we examined the relationship between contractual obligations and general police powers. WICO brought suit against the Government of the Virgin Islands for a violation of the contract clause of the United States Constitution after the Government enacted a Repeal Act which purported to repeal a Second Addendum to a settlement agreement between the Government and WICO that exempted WICO from the CZMA. WICO, 844 F.2d 1013–14.

We noted that the threshold inquiry in such a case is whether the state law has operated as a substantial impairment of a contractual relationship. Id. at 1021. We held that the Repeal Act substantially impaired WICO's contractual rights under the Second Addendum by attempting to withdraw WICO's right to be free for a limited time from CZMA restrictions. In completing our analysis, we held that the Repeal Act was invalid because there was no legitimate public purpose for the regulation's substantial impairment.4 Significantly, we noted that:

_____

3. TRA also argues that the CZMA, by its own terms, does not apply to development of the Island because the agreement granted TRA a vested right to develop prior to the effective date of the CZMA. As properly noted
by the district court, the Board's interpretation of the CZMA does not relate to TRA's breach of contract claim but is more appropriately analyzed in connection with a potential writ of review. Accordingly, we will discuss this portion of TRA's argument in Part III in connection with TRA's constitutional claims.

4. We applied the following three-step analysis from the Supreme Court's decision in Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411–12 (1983): (1) whether the state law substantially impairs the contractual relationship; and if so (2) whether the state has a significant and legitimate public purpose for the regulation; and if so (3) whether the adjustment of rights and responsibilities of the contracting parties is based on reasonable conditions and is of a character appropriate to the public purpose justifying adoption of the regulation. WICO, 844 F.2d at 1021. We held that the Repeal Act was invalid because there was a substantial impairment in WICO's contractual relationship and because the Repeal Act could not be justified by a significant public purpose. Id. at 1021–22.

> We hold only that the Repeal Act is invalid. We do not,
> of course, hold that the police power of the Virgin
> Islands with respect to WICO's [land] was exhausted
> when the Second Addendum was approved. WICO is
> obviously not immune from generally applicable police
> power measures not inconsistent with the Second
> Addendum. Moreover, if conditions materially change
> so as to create a substantial problem that could not be
> foreseen in 1982, it may be that generally applicable
> land use regulations could validly alter the manner in
> which WICO may utilize its property.

Id. at 1022-23.

In accordance with WICO, TRA is not immune from
Government regulations that are not inconsistent with
TRA's contractual rights under the agreement. Because we
hold that the agreement is unambiguous and grants TRA
the right to use the Island for commercial purposes but
does not grant TRA unlimited discretion to develop the
Island for that use, the Government's application of the
CZMA to TRA does not impair any of TRA's contractual
rights. Accordingly, summary judgment was appropriately
granted in favor of the Government on TRA's breach of
contract claim.

III.

With respect to TRA's constitutional claims, we exercise
plenary review over the district court's decision to examine
these claims in an appellate capacity. See Union Pacific R.R.
Co. v. Ametek, Inc., 104 F.3d 558, 561 (3d Cir.
1997)(stating that "[t]his court exercises plenary review over
matters of jurisdiction."). In order to evaluate the propriety
of the district court's decision, we must first examine the
boundaries of the jurisdiction currently conferred upon the
District Court of the Virgin Islands.

A.

Our analysis of the jurisdictional boundaries of the
District Court of the Virgin Islands must begin with Article
IV, Section 3 of the United States Constitution, which

11

grants Congress the power to designate the jurisdiction of the district court and the territorial court. Brow v. Farrelly, 994 F.2d 1027, 1032 (3d Cir. 1993). Congress first exercised this power in 1936 by enacting the Revised Organic Act, 48 U.S.C. SS 1541–1645 (1994). Id. The 1936 Revised Organic Act was subsequently replaced by the more comprehensive Revised Organic Act of 1954. The Revised Organic Act acts as the constitution of the Virgin Islands and as such defines the jurisdictional boundaries of the Virgin Islands courts. Id.

Section 1612 of the 1954 Revised Organic Act confers upon the District Court of the Virgin Islands federal question jurisdiction as well as original jurisdiction over questions of local law subject to the exclusive jurisdiction of local courts over civil actions where the amount in controversy is less than $500. Revised Organic Act of July 22, 1954, ch. 558, SS 22–23, 68 Stat. 506 (1955) (amended 1978, 1984); Brow, 994 F.2d at 1032. In addition, section 1613 of the 1954 Revised Organic Act provides that local courts shall share concurrent jurisdiction over all actions conferred upon them by local law. Revised Organic Act of July 22, 1954, ch. 558, S 23, 68 Stat. 506 (1955) (amended 1978, 1984); Brow, 994 F.2d at 1032 n.2.

In 1984, Congress amended the Revised Organic Act and effectively eliminated the District Court of the Virgin Islands' original jurisdiction over local matters. Congress amended section 1612(b) by granting the district court only original jurisdiction over federal questions, diversity actions and any local matters "the jurisdiction over which is not then vested by local law in the local courts of the Virgin Islands." 48 U.S.C. S 1612(b)(1994). In addition, Congress amended section 1611(b) to permit the Virgin Islands legislature to vest jurisdiction in the local courts over all matters in which any court established by the United States does not have exclusive jurisdiction. Id. at S 1611(b). We have interpreted section 1611 as amended as empowering the Virgin Islands legislature to completely divest the district court of its original jurisdiction over local actions. Estate of Thomas Mall, Inc. v. Territorial Court of Virgin Islands, 923 F.2d 258, 262–64 (3d Cir. 1991).

12

In 1990, the Virgin Islands legislature exercised this power and divested the district court of its jurisdiction over all local civil matters effective October 1, 1991. V.I. Code Ann. tit. 4, S 76(a) (1997). We have held that this 1990 enactment not only stripped the district court of its original jurisdiction over local matters when a complaint is filed in the district court, but also divested the district court of its jurisdiction to determine writs of review appealing local administrative determinations. Moravian Sch. Advisory Bd. of St. Thomas V.I. v. Rawlins, 70 F.3d 270, 273 (3d Cir. 1995). Specifically, we held that the Virgin Islands legislature implicitly repealed the general Virgin Islands provision which establishes writs of review as civil actions, V.I. Code Ann. tit. 5, S1421, to the extent that provision confers writ of review jurisdiction upon the district court over local matters. Id.

B.

The district court examined TRA's constitutional claims in its appellate capacity based on the premise that TRA could have brought those claims via a writ of review in the district court pursuant to V.I. Code Ann. tit. 12, S 913(d)(1982). Section 913(d) is a provision of the CZMA which provides that a petition for writ of review may be filed in the district court pursuant to the general Virgin Islands writ of review provisions by any person aggrieved by the denial of an application for a coastal zone permit. V.I. Code Ann. tit. 12, S 913(d). Under the rationale of Moravian and because the general Virgin Islands writ of review provisions have been implicitly repealed as they apply to the district court's jurisdiction to decide writs of review over local matters, section 913 of the CZMA is similarly invalid as it applies to the district court's former writ of review jurisdiction. TRA therefore could not have brought a writ of review in the district court under section 913(d) of the CZMA. Accordingly, the district court erred in reviewing TRA's constitutional claims in its appellate capacity.

At oral argument, the Government stated that it was unopposed to our remanding TRA's constitutional claims. Because the district court should examine TRA's constitutional claims under its original jurisdiction in the

13

first instance, we will remand for the district court to determine whether there are any genuine issues of material fact relating to these claims that would preclude summary judgment.5

IV.

We conclude that because the Agreement unambiguously grants TRA the use of Hans Lollik Island for commercial purposes but does not grant TRA unlimited discretion in development, the Government did not breach the Agreement by applying CZMA restrictions to TRA. We will therefore affirm that portion of the district court's order that granted summary judgment on Count I. We also find that the district court erred in examining Counts II, III, and IV under its former writ of review jurisdiction, and therefore remand for further proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit
_____

5. As previously noted, TRA has asserted on appeal that the CZMA by its own terms does not apply to TRA because the Agreement granted TRA a vested right in development prior to the effective date of the CZMA. The district court interpreted this claim as a writ of review challenge to the CZMC's decision to deny TRA a CZMA permit. While we hold that the district court does not have original jurisdiction over writs of review, on
remand the district court should determine whether it would be appropriate to exercise supplemental jurisdiction over any writ of review claims fairly made by TRA. See City of Chicago v. International College of Surgeons, ___ S. Ct. ___, ___ 1997 WL 76450, *7 (1997)(holding that district court had supplemental jurisdiction over claims challenging administrative decision once case was properly removed based on original jurisdiction arising from constitutional claims).

14