**UNITED STATES OF AMERICA and the PEOPLE OF THE VIRGIN ISLANDS, Plaintiffs**

v.

**GLEN LEWIS a/k/a GLENNDON LEWIS, Defendant**

Criminal No. 2008-45

District Court of the Virgin Islands

Division of St. Thomas and St. John

December 24, 2008

EVERARD E. POTTER, AUSA, St. Thomas, USVI, *For the plaintiffs.*

JESSE A. GESSIN, AFPD, St. Thomas, USVI, *For the defendant.*

GÓMEZ, *Chief Judge*

## MEMORANDUM OPINION

(December 24, 2008)

Before the Court is the motion of the defendant, Glen Lewis a/k/a Glenndon Lewis ("Lewis"), to dismiss the indictment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Lewis was charged in September, 2008 in a two-count indictment. Count One charges Lewis with possession of a firearm that has moved in

interstate commerce, within 1,000 feet of a place Lewis knew and had reasonable cause to believe was a school zone, in violation of 18 U.S.C. § 922(q)(2)(A) ("Section 922(q)(2)(A)")[1]. Count Two charges Lewis with unauthorized possession of a firearm, in violation of V.I. CODE ANN. tit. 14 § 2253(a) ("Section 2253(a)")[2].

Lewis seeks dismissal of both counts in the indictment on the basis of the Second Amendment and the Supreme Court's recent decision in *District of Columbia v. Heller*, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). Lewis's argument is limited to his claim that Section 922(q)(2)(A) and Section 2253(a) are unconstitutional because they place "unreasonable restrictions upon possession of a firearm." (Def.'s Mot. to Dismiss 2.)

## II. DISCUSSION

The Second Amendment of the Constitution provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. CONST. amend. II.

The import of the Second Amendment has long been a subject of fierce debate. That debate has been largely between advocates of the individual rights theory and the collective rights theory. According to the former, the Second Amendment protects an individual right to possess a firearm unconnected with service in a militia. According to the latter, the Second Amendment protects only a right of the various state governments to preserve and arm their militias. In *District of Columbia v. Heller*, the

---

[1] Section 922(q)(2)(A) provides:

 It shall be unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone.

18 U.S.C. § 922(q)(2)(A).

[2] Section 2253(a) provides:

 Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, . . . loaded or unloaded, may be arrested without a warrant[.]

V.I. CODE ANN. tit. 14 § 2253(a). The Virgin Islands Code, at Title 23, Chapter 5, sets forth rules and regulations governing who may obtain authorization to possess a firearm and how such authorization may be obtained.

United States Supreme Court settled that debate in favor of the individual rights theory.

The plaintiff in *District of Columbia v. Heller* was a District of Columbia special police officer who was authorized to carry a firearm while on duty. The plaintiff applied to the District of Columbia for a license to keep his firearm in his home. The District of Columbia rejected the plaintiff's application on the basis of local statutes that provided as follows:

> It is a crime to carry an unregistered firearm, and the registration of handguns is prohibited. Wholly apart from that prohibition, no person may carry a handgun without a license, but the chief of police may issue licenses for 1-year periods. District of Columbia law also requires residents to keep their lawfully owned firearms, such as registered long guns, unloaded and dissembled or bound by a trigger lock or similar device unless they are located in a place of business or are being used for lawful recreational activities.

*Heller*, 128 S. Ct. at 2817 (internal quotation marks and citations omitted). The plaintiff challenged the constitutionality of these statutes.

■ The Supreme Court agreed that those statutes violated the plaintiff's constitutional rights, holding that the District of Columbia's

> ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense. Assuming that [the plaintiff] is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home.

*Heller*, 128 S. Ct. at 2821-22. The Court concluded that the Second Amendment confers an "individual right to possess and carry weapons in case of confrontation," *id.* at 2797, but made clear that this right "is not unlimited." *Id.* at 2816. Specifically, the Court observed:

> From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed

weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 2816-17 (internal citations omitted). In a footnote, the Court noted that it "identif[ied] these presumptively lawful regulatory measures only as examples" and that its "list does not purport to be exhaustive." *Id.* at 2817 n.26.

In *Heller*, the Court did not direct the lower courts to apply any one of the "traditionally expressed levels" of scrutiny in determining whether a regulation runs afoul of the Second Amendment. *Id.* at 2821. Such an undertaking was unnecessary in *Heller* because the law under consideration in that case would have been unconstitutional "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights[.]" *Id.* at 2817. The Court was not entirely silent on this point, however. The Court listed the traditional levels of scrutiny it has applied in other cases involving constitutional challenges to statutory regulations: "strict scrutiny, intermediate scrutiny, rational basis." *Id.* at 2821. The Court also noted that the District of Columbia law, at the very least, "would pass rational-basis scrutiny." *Id.* at 2817 n.27.[3]

■ With respect to Count One of the indictment, this Court need not decide today what level of scrutiny should apply to post-Heller challenges to Section 922(q)(2)(A). As noted in the passage from *Heller* quoted above, the Supreme Court expressly held up prohibitions on firearms "in sensitive places such as schools" as an example of a lawful regulation. *Id.*

---

[3] Despite this comment, the Supreme Court declined to extend rational-basis scrutiny to future Second Amendment challenges. The Court observed that rational-basis scrutiny has been applied only to "constitutional commands that are themselves prohibitions on irrational laws." *Heller*, 128 S. Ct. at 2817 n.27 (citation omitted). In contrast, the Court reasoned "the same test could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms." *Id.* (citation omitted). Applying that reasoning, the Court stated that "[i]f all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." *Id.*

at 2816-17. It is beyond peradventure that a school zone, where Lewis is alleged to have possessed a firearm, is precisely the type of location of which *Heller* spoke. Indeed, *Heller* unambiguously forecloses a Second Amendment challenge to that offense under any level of scrutiny. Lewis's motion will therefore be denied with respect to Count One.

The Court must assess Count Two's Section 2253(a) charge against a different backdrop because *Heller* declined to address the District of Columbia's licensing requirement. 128 S. Ct. at 2819. To properly consider the effect, if any, of the Second Amendment on Section 2253(a), the Court will first address the reach of the Second Amendment.

█ In various pre-*Heller* cases, the Supreme Court held that the Second Amendment constrains only the federal government and therefore does not apply to the states. *See, e.g., Twining v. New Jersey*, 211 U.S. 78, 98, 29 S. Ct. 14, 53 L. Ed. 97 (1908); *Maxwell v. Dow*, 176 U.S. 581, 597, 20 S. Ct. 448, 44 L. Ed. 597 (1900); *Miller v. Texas*, 153 U.S. 535, 538, 14 S. Ct. 874, 38 L. Ed. 812 (1894); *Presser v. Illinois*, 116 U.S. 252, 265, 6 S. Ct. 580, 29 L. Ed. 615 (1886) (reasoning that the Second Amendment "is a limitation only upon the power of Congress and the National government, and not upon that of the States"); *United States v. Cruikshank*, 92 U.S. 542, 553, 23 L. Ed. 588 (1876) (stating that the Second Amendment "is one of the amendments that has no other effect than to restrict the powers of the national government").

Although the Supreme Court's holdings on this issue are more than one century old, they have been cited by several federal courts of appeal for the proposition that the Second Amendment has not been incorporated through the Fourteenth Amendment and therefore does not apply to the states. *See, e.g., Bach v. Pataki*, 408 F.3d 75, 84 (2d Cir. 2005) ("[W]e hold that the Second Amendment's 'right to keep and bear arms' imposes a limitation on only federal, not state, legislative efforts.") (footnote omitted); *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 538 n.18 (6th Cir. 1998); *Love v. Pepersack*, 47 F.3d 120, 123 (4th Cir. 1995); *Fresno Rifle and Pistol Club, Inc. v. Van De Kamp*, 965 F.2d 723, 731 (9th Cir. 1992); *Thomas v. Members of the City Council of Portland*, 730 F.2d 41, 42 (1st Cir. 1984) (per curiam); *Quilici v. Village of Morton Grove*, 695 F.2d 261, 270 (7th Cir. 1982).

█ State courts have likewise found that state legislative action is not restricted by the Second Amendment. *See, e.g., State v. Mendoza,* 82 Haw. 143, 920 P.2d 357, 360 (Haw. 1996) ("[T]he Second Amendment does not

apply to the States through the fourteenth amendment to the United States Constitution.") (citation omitted); *People v. Swint*, 225 Mich. App. 353, 572 N.W.2d 666, 669 (Mich. Ct. App. 1997) ("[T]he Second Amendment is not applicable to the states through the Fourteenth Amendment."); *State v. Friel*, 508 A.2d 123, 125 (Me. 1986) (citations omitted); *Demyan v. Monroe*, 108 A.D.2d 1004, 1005, 485 N.Y.S.2d 152 (N.Y. App. Div. 1985); *Burton v. Sills*, 99 N.J. Super. 516, 240 A.2d 462, 468 (N.J. Super. Ct. Law Div. 1967) ("[T]he Second Amendment merely protects against unwarranted extensions of federal power and does not bar a state government from enacting regulations concerning the use and possession of arms.").

In *Heller*, the Supreme Court noted its previous holdings that the Second Amendment has not been incorporated through the Fourteenth Amendment and thus is inapplicable to the states. 128 S. Ct. at 2813 n.23 (remarking that those decisions "reaffirmed that the Second Amendment applies only to the Federal Government"). The Court declined, however, to revisit this issue because it was "not presented by this case[.]" *Id.*; *see also United States v. Fincher*, 538 F.3d 868, 873 n.2 (8th Cir. 2008) (noting that *Heller* "did not address the question whether the Second Amendment is incorporated through the Fourteenth Amendment and thus applicable to the states").

■ The Virgin Islands, of course, is not a state but an unincorporated territory. *United States v. Hyde*, 30 V.I. 475, 37 F.3d 116, 121 (3d Cir. 1994) (citation omitted); *Government of the Virgin Islands v. Dowling*, 17 V.I. 623, 633 F.2d 660, 667 (3d Cir. 1980). As such, the Virgin Islands is subject to Congress's authority under Article IV, Section 3 of the Constitution to make rules and regulations to govern the territory. *Hyde*, 37 F.3d at 121 (footnote omitted). Congress may therefore decide which provisions of the Constitution apply to the Virgin Islands. *See* U.S. CONST. art. IV, § 3, cl. 2; *see also Government of the Virgin Islands v. Bodle*, 427 F.2d 532, 533 n.1, 7 V.I. 507 (3d Cir. 1970).

■■ In the exercise of its "Power to . . . make all needful Rules and Regulations respecting the Territory . . . belonging to the United States," U.S. CONST. art. IV, § 3, cl. 2, Congress enacted a Bill of Rights for the Virgin Islands at Section 3 of the Revised Organic Act of 1954 (the

"ROA")[4]. *See United States v. Ntreh*, 279 F.3d 255, 257 (3d Cir. 2002); *In re Brown*, 8 V.I. 313, 439 F.2d 47, 50-51 (3d Cir. 1971) (en banc). "With the passage of the Revised Organic Act, Congress intended to grant 'a greater degree of autonomy, economic as well as political, to the people of the Virgin Islands.' " *Government of Virgin Islands v. Bryan*, 818 F.2d 1069, 1072 (3d Cir. 1987) (citing *Virgo Corp. v. Paiewonsky*, 6 V.I. 256, 384 F.2d 569, 576 (3d Cir. 1967)); *Water Isle Hotel & Beach Club, Ltd. v. Kon Tiki St. Thomas, Inc.*, 795 F.2d 325, 328 (3d Cir. 1986) (noting that "the history of the relationship between the United States and the Virgin Islands indicates that *Congress desired the territory to have jurisdictional powers analogous to those of a state*") (emphasis supplied); *cf. In re Estate of Hooper*, 5 V.I. 518, 359 F.2d 569, 578 (3d Cir. 1966) ("While not sovereign, in the true sense of that term, the Revised Organic Act has conferred upon [the Virgin Islands] attributes of autonomy similar to those of a sovereign government or a state.").

The Bill of Rights in the ROA provides, in pertinent part:

> The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands to the extent that they have not been previously extended to that territory and *shall have the same force and effect there as in the United States or in any State of the United States. . . . : the first to ninth amendments inclusive*[.]

48 U.S.C. § 1561 (emphasis supplied).

 By its very terms, the ROA provides for the application of the Second Amendment to the Virgin Islands. That application, however, is subject to one caveat. Specifically, the Second Amendment's application to the Virgin Islands is coextensive with the amendment's application to the states. *See, e.g., United States v. Hyde*, 29 V.I. 106, 111-112 (D.V.I. 1993) (concluding that the ROA's Bill of Rights operates to give the Fourth Amendment "the same force and effect in [the] Virgin Islands as it has in any state of the United States"), *rev'd on other grounds,* 37 F.3d 116, 30 V.I. 475 (1994); *see also, e.g., Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1370 (9th Cir. 1992) (finding that

---

[4] The ROA operates as the *de facto* constitution of the Virgin Islands. *See Parrott v. Government of the Virgin Islands*, 43 V.I. 277, 230 F.3d 615, 623 (3d Cir. 2000); *Tamarind Resort Assocs. v. Virgin Islands*, 39 V.I. 485, 138 F.3d 107, 113 (3d Cir. 1998).

"*Roe v. Wade* applies to Guam as it applies to the states" because Guam's Organic Act provides that "the relevant constitutional amendments 'have the same force and effect' in Guam as in a state of the United States"). As discussed above, the "force and effect" of the Second Amendment on the states is nil because that amendment has not been incorporated through the Fourteenth Amendment. As a consequence, the plain language of the Bill of Rights in the ROA suggests that the Virgin Islands authorities are similarly unconstrained by the Second Amendment.

The proposition that the Second Amendment does not apply to the local authorities finds ample support in the nature of the relationship between Congress and the Virgin Islands. The United States Court of Appeals for the Third Circuit addressed that relationship in *Harris v. Boreham*, 3 V.I. 565, 233 F.2d 110 (3d Cir. 1956).

In *Harris,* the plaintiff fell on a street in Charlotte Amalie, St. Thomas and thereafter sued the United States under the Federal Tort Claims Act for damages flowing from the injuries she sustained from her fall. The plaintiff argued that any negligence by the government of the Virgin Islands in maintaining the street was imputable to the United States on the theory that all streets in the Virgin Islands — which is itself, in essence, a possession of the United States — are ultimately the property of the United States. The Third Circuit rejected that theory. Noting that the Superintendent of Public Works of the government of the Virgin Islands was responsible for road maintenance, the court undertook to determine whether the Superintendent was an employee of the United States in the discharge of his duties. The Federal Tort Claims Act defined "employee" to include

> officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, with or without compensation.

*Harris*, 233 F.2d at 116. The Third Circuit concluded that the government of the Virgin Islands was not a "federal agency" within the meaning of the Federal Tort Claims Act. The court reasoned that it is

> clear that the [government of the Virgin Islands] in the unincorporated territory of the Virgin Islands [is] a body politic quite distinct from the Government of the United States and that it ha[s] attributes of sover-

eigny which ha[ve] been delegated to it by the Government of the United States but which [are] distinct from the powers of that government.

*Id.* at 114. The court explained its reasoning:

It is settled that Congress has sovereignty over the territories of the United States and accordingly has power to legislate for a territory with respect to all subjects upon which the legislature of a state might legislate within the state. It is also settled that Congress may delegate to a territory such of these powers as it sees fit. And the right of Congress to revise, alter and revoke these delegated powers does not diminish the powers while they reside in the territory. *The aim of Congress is to give the territory full power of local self-determination. The local laws enacted under the legislative power granted by Congress are accordingly territorial laws, not laws of the United States.*

*Id.* at 113 (emphasis supplied; internal citations and footnote omitted).[5]

 That Section 2253(a) is a local law is incontestable. Congress, exercising its constitutional authority, drafted into the ROA a provision for the creation of the Legislature of the Virgin Islands. *See* 48 U.S.C. § 1571(a) ("The legislative power and authority of the Virgin Islands shall be vested in a legislature, consisting of one house, to be designated the 'Legislature of the Virgin Islands', herein referred to as the legislature."). That provision unambiguously manifests a congressional intent to vest in the Legislature of the Virgin Islands the power to promulgate laws for the territory extending "to all rightful subjects of legislation." *Creque v. Roebuck*, 16 V.I. 197, 205 (V.I. Terr. Ct. Mar. 19, 1979) (citations omitted).

 The Legislature of the Virgin Islands, in turn, independently exercised the authority vested in it by Congress by way of the ROA in

---

5 This Court has noted that although *Harris* "arose under the 1936 Organic Act, the [Third Circuit] noted that its ruling would be no different under the Revised Organic Act of 1954." *Jackson v. West Indian Co.*, 35 V.I. 269, 944 F. Supp. 423, 429 (D.V.I. 1996) (alteration and citation omitted). This Court has further found that *Harris* "applies with even more force under the Revised Organic Act, as amended, which has established an elected governor and legislature, as well as a territorial judiciary independent of the District Court of the Virgin Islands." *Id.* (citation omitted).

enacting Section 2253(a). Thus, Section 2253(a) is a purely territorial law that cannot be imputed to the United States.[6] *See, e.g., Bryan,* 818 F.2d at 1072 (reasoning that the "suggestion that an Act passed by the Legislature of the Virgin Islands is an Act of Congress is contrary to [Third Circuit] precedent"); *Government of Virgin Islands v. Ortiz,* 7 V.I. 521, 427 F.2d 1043, 1047 (3d Cir. 1970) (reasoning that the crime of first-degree murder in the Virgin Islands Code "is not 'in violation of an Act of Congress' because the crime was created by an act of the Virgin Islands legislature"); *Dudley v. Commissioner,* 3 V.I. 685, 258 F.2d 182, 188 (3d Cir. 1958) (holding that because officers of the Virgin Islands "are not appointed by nor under the control or authority of the Secretary of the Treasury nor are they his delegates[,] [t]hey are territorial and not federal officers").

██ For these reasons, the Court finds that the Second Amendment of the Constitution does not constrain purely territorial action by the Virgin Islands authorities. Lewis's Second Amendment challenge to Section 2253(a) therefore must fail. Accordingly, the motion will also be denied with respect to Count Two of the indictment.

## III. CONCLUSION

For the reasons discussed above, Lewis's motion to dismiss the indictment will be denied. An appropriate order follows.

---

[6] In *Harris,* the Third Circuit remarked, in a passage that bears particular resonance here, that:

> we cannot subscribe to the statement . . . that local laws continued in force in a territory by virtue of a provision of its organic act are laws of the United States. *Such a view denies the existence of an independent, though delegated, sovereignty in the territory and treats its legislature as a mere federal agency.*

233 F.2d at 113 n. 4 (emphasis supplied).